## LAURA PATTERSON et al.

### *vs.*

## MAYOR AND CITY COUNCIL OF BALTIMORE.

*Article 3, section 40 : Constitution; taking of private property;
jury trial, may be given to both parties; appeals.. Con-
demnation of land : value; evidence; sales of similar
lands; discretion of trial court.   Prayers :
mere abstractions of law.   New trials :
discretion of court.*

Section 40 of Article 3 of the Constitution of Maryland, pro-
hibiting the taking of private property for public use without
just compensation as agreed between the parties, or awarded
by a jury, does not prohibit the enacting of laws conferring
such right of a jury trial upon other, or all, parties to con-
demnation proceedings.                          pp. 235-236

Under such section of the Constitution, the Legislature may
confer the right to a jury trial upon the Mayor and City Coun-
cil of Baltimore, even in a case where the appeal was taken by
the other party.                               pp. 237, 238

The provision in section 179 of the Charter of Baltimore
City (Chapter 123 of the Acts of 1898), to the effect that the
"persons" appealing to the City Court from the amounts of
assessments or damagess allowed in condemnation cases shall
be secured in the right of a jury trial," applies as well to the
City as to the landowner.                          p. 236

In such proceedings, the City is entitled to a jury trial, even
though the appeal was taken by the other party.   pp. 237, 238

Prayers that submit to the jury mere abstractions of law are
erroneous and should be refused.                    p. 240

In establishing the value of lands, the prices realized at sales
of similar lands in the vicinity, made within a reasonable period
of time theretofore, at voluntary and not forced sales, are admis-
sible in evidence.                                p. 241

The determination of the degree of similarity that must exist, in order to admit such evidence, and the nearness in respect to time and place, must largely be left to the discretion of the trial judge.                                              p. 241

In determining the value of lands taken by condemnation proceedings for the opening of streets, etc., the possibility of a car line being constructed upon the street to be opened, is too speculative to be considered.                              p. 242

In general, no appeal lies to the Court of Appeals from the refusal of the lower court to grant a new trial.          p. 242

*Decided December 16th, 1915.*

Appeal from the Baltimore City Court.   (GORTER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Arthur W. Machen, Jr.,* and *Ward B. Coe,* for the appellants.

*S. S. Field, City Solicitor,* and *George Arnold Frick, Assistant City Solicitor,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

We are called upon by this appeal, to review the rulings of the Baltimore City Court at the trial of the appeal taken by Laura Patterson and Sidney T. Dyer and Laura Patterson, Trustee, appellants in this Court, from the award of the Commissioners for Opening Streets in the City of Baltimore, by which damages were awarded and benefits were assessed

to said appellants in the matter of the opening of Twenty-fifth street from the east side of Greenmount avenue to the west side of Harford avenue, under Ordinance No. 416 of the Mayor and City Council of Baltimore, approved December 9th, 1909.

The first question presented by the record is, whether the city was entitled to have the issues presented by the aforesaid appeal to the Baltimore City Court tried by a jury.

The petitioners having waived their right to a trial by jury asked that the issues be tried by the Court, whereupon the City, through its solicitor, announced that it had not waived its right to a jury trial, and asked that a jury be empanelled to try the case. The Court overruled the application of the petitioners, and, as directed by the Court, a jury was empanelled, and the case tried by it.

It is contended by the appellants that in these cases the right of trial by jury, under the Constitution and statutes of this State, is lodged only in the landowners and that the City has no such right, either under the organic or statute law of the State.

The Constitution of Maryland, *Section 40, Article 3,* provides that "the General Assembly of Maryland shall enact no law authorizing private property to be taken for public use without just compensation as agreed upon between the parties or awarded by a jury."

This section of the Constitution, in respect to the question here raised, has never been passed upon by this Court, and so far as we are able to discover, such question has never been presented for its consideration.

The counsel in the case have cited expressions of this Court found in its previous opinions, in support of their respective contentions, but such expressions, we think, fail to show any decided views upon the question, and we think it unnecessary to pass upon it at this time in deciding the questions presented by this appeal. The inhibition found in this clause of the Constitution does not prohibit the enactment, by the Legislature, of a law conferring such right of

jury trial upon other, or all, parties to condemnation proceedings.

By the City Charter (Chapter 123 of the Acts of 1898), the Commissioners for Opening Streets are charged with the duty of "opening, extending, widening, straightening or closing any street, lane, alley or part thereof situated in Baltimore City whenever the same shall be directed by ordinance to be done," and in so doing they are to assess benefits to those who are benefited thereby, within the meaning of the statute, and are to award damages to those whose lands are taken for such public use.

It is further provided by the Charter (Section 179) that "the Mayor and City Council of Baltimore or any person or persons, or corporations, who may be dissatisfied with the assessment of damages or benefits, as hereinbefore provided, may * * * appeal therefrom by petition, in writing, to the Baltimore City Court, praying the said Court to review the same, * * * and the said City Court shall have full power to hear and fully examine the subject, and decide on the said appeal, * * * and the persons appealing to the Baltimore City Court, as aforesaid, shall be secured in the right of a jury trial, and the said Court shall direct the Sheriff of Baltimore City to summon twelve or more persons qualified to be jurors, and shall empanel any twelve disinterested persons, so summoned, or attending the Court, to try any question of fact, and, if necessary to view any property in the City, or adjacent thereto, to ascertain and decide on the amount of damage or benefits, under the direction of the Court."

Prior to the Act of 1898, the right of appeal to the City Court from the action of the Commissioners for Opening Streets was not given by statute to the Mayor and City Council, but was confined to those generally termed in such proceedings as the "land owners," or those to whom benefits are assessed or to whom damages are awarded, but by the present City Charter, Section 179 aforesaid, such right of appeal is also conferred upon the Mayor and City Council.

It is, however, contended by the petitioners that although the right of appeal is lodged in the city, the right of a jury trial is not conferred upon it by the statute, even though the appeal be taken by the City.   This contention is based upon the expression in the statute that "the *persons* appealing to the Baltimore City Court, as aforesaid, shall be secured in the right of a jury trial," it being contended by the petitioners that the Mayor and City Council, a municipal corporation, is not included in the term *persons,* and therefore no right of jury trial is conferred upon it.

It is said in *Lewis on Eminent Domain* (3rd Ed.), sec. 790, that "as the right of appeal is conferred by statute, every appeal must find its warrant in the statute.   In statutes granting appeals the words 'persons' will include corporations," and by the Code of Public General Laws of this State (1912), *Article 1, Section 14,* it is specially provided that the word *persons* shall include corporations unless such a construction of the statute would be unreasonable.   To construe the word persons in the statute before us as including a municipal corporation, is not at all unreasonable and it should therefore be so construed.

The further contention is made by the petitioners that the City has not the right of jury trial when the appeal is taken by the land owner, even though it be held that the City has such right when the case is in Court upon its own appeal.

This contention is also based upon the above quoted language of the statute which is construed by the petitioners as giving the right of jury trial only to those taking the appeal.

As we have said the land owner or the City, or both, may, under the statute, appeal to the Baltimore City Court, from the award of the Commissioners for Opening Streets when dissatisfied with such award, and it is difficult to understand just why, or for what reason, this right is lost to the City, when it is brought into Court on appeal by the adverse party.

In this case the petitioners appeal because they are dissatisfied with the award.   Their object in appealing is to

obtain a decision more favorable to them, and because the City is satisfied, and does not appeal, according to the contention of the appellants, it should be deprived of its right of jury trial, although the petitioners, as claimed by them, may exercise such right. The statute, we think should not be given this construction unless it is clearly shown by its language that such was the intention of the Legislature.

The statute has been amended several times, one of the last amendments being the one that gives to the Mayor and City Council the right of appeal accompanied by the right of trial by jury, clearly expressed, in cases where the appeal is taken by the City, and it is in connection with this amendment that we must consider the meaning of the words above quoted relating to the question as to whom the right of jury trial is given; and after a careful examination and consideration of the whole statute, as amended, we are of the opinion that the construction placed upon it by the petitioners is not in accord with the legislative intent and meaning of the statute. Its meaning is, we think, that in the event of the "persons"—those to whom the right of appeal is given— "appealing as aforesaid," the right of jury trial shall be secured, not alone to the party taking the appeal, but to all persons to whom the right of appeal is given, including the Mayor and City Council. The argument was made by the petitioners that the provisions in the statute, "that persons appealing shall be secured in the right of trial by jury," presupposed an existing right and that these were not "apt words to create a new right" and that by such provision no rights were created, but only existing rights secured thereby.

The claim was made that the right of trial by jury in these cases accrued to the land owners, and only to them, from the aforesaid Section 40 of Article 3 of the present Constitution, and that it was only to secure this right that the aforesaid words, of the statute * * *, were inserted therein; but this argument loses whatever force or weight it might otherwise have, when it is disclosed that practically

the same words are found in the Acts of 1838, Chapter 226, at which time the Constitution of this State then in force,— the Constitution of 1776—contained no such provision, and therefore the land owner's right of trial by jury at such time was created and conferred upon him by the statute and was not a pre-existing constitutional right, secured to him by such statute. This provision appeared for the first time in the Constitution of 1851 (Article 3, Section 46), and was thereafter inserted in the succeeding Constitutions of 1864 (Article 3, Section 39) and 1867.

In the course of the trial exceptions were taken to rulings of the Court relating to the admission of evidence and also to its rulings upon the prayers.

The Court granted the first, second, third, sixth, seventh, tenth and eleventh prayers of the petitioners and rejected their fifth, ninth, twelfth, thirteenth, fourteenth and fifteenth prayers; and of the City's prayers, it granted the ninth as offered and the fifth as modified. The petitioners excepted to the action of the Court in rejecting their said fifth, ninth, twelfth, thirteenth and fourteenth prayers, and in granting the City's fifth prayer and excepted, both generally and specially, to the granting of the 9th prayer of the City.

The City's ninth prayer instructed the jury that "when the City acquires title to land for the purposes of a street, in pursuance of an ordinance passed for that purpose, there is an obligation upon the City to complete the said street so that it may be used by the public as a street and that this obligation may be enforced by the abutting property owner from whom the land has been taken for such street, unless the said ordinance be repealed, and that, if the said ordinance be repealed, or if the City shall delay the construction of the said street, without legal justification, the abutting property owner from whom land has been taken for a street may have an action of damages against the City, if he shall have sustained damages through such repeal or such delay."

This instruction submits to the jury mere abstract questions of law, the correctness of which need not be inquired into.

The jury was called upon to ascertain the damages to be awarded and the benefits to be assessed to the petitioners.

The questions of law submitted by this instruction were not applied to the evidence in the case, nor had they any bearing or relation to the issues that were to be determined by the jury, and in no proper way could they have aided it in deciding such questions. Whether there is an obligation upon the City, in cases like the one before us, to complete the street to be used as such by the public, that may be enforced by the abutting property owners, if the ordinance is not repealed, and whether, in the event of a repeal of said ordinance or of delay in "the construction of the street, without legal justification, the abutting property owner from whom land has been taken for a street may have an action for damages against the City, if he shall have sustained damages through such repeal or such delay," are not ques-

The petitioners' ninth, thirteenth and fourteenth prayers tions that should have been submitted to the jury. These questions should not have been injected into the case.

The objection of the petitioners to the City's fifth prayer granted as modified appears to have been abandoned.
also contain statements, and propositions of law that had, we think, no proper bearing or relation to the issues that were to be determined by the jury, and were in our opinion likely to mislead and confuse it, and therefore they should not have been granted. The Court likewise committed no error in its refusal to grant the petitioners' twelfth prayer. The fifteenth prayer of the petitioners, offered upon the granting of the City's ninth prayer—which we have said was improperly granted—was also properly refused.

The law of the case in respect to the method of ascertaining the benefits to which the petitioners are entitled, as presented by the petitioners' seventh prayer, is certainly most

favorable to the petitioners, and the granting of their fifth prayer—if it properly states the law—would have added nothing thereto that in any way could have benefited the petitioners or would have assisted the jury in reaching its conclusion, and consequently the petitioners were not injured by the Court's refusal to grant it.

The second, third, fourth, tenth and eleventh exceptions relate to the admission of testimony by which the value of the property of the petitioners was sought to be established by the amounts at which other lands, known to the witnesses had been sold.

It is the settled law; in this State and elsewhere, that in establishing the value of land, the prices realized at the sales of similar lands in the vicinity, made within a reasonable period of time theretofore, being voluntary and not forced sales, are admissible in evidence, either on direct or cross examination of witnesses conversant with the facts. *Mayor and City Council of Baltimore* v. *Smith,* 80 Md. 472-473, and other cases there cited.

In regard to the degree of similarity which must exist and the nearness in respect of time and place no general rules are laid down, and as the trial judge is usually conversant with such matters they must be left largely to his discretion.

Applying the law as we have stated it to the aforesaid exceptions, we find no error in the ruling of the Court in admitting such testimony, although in some of the exceptions, especially the third and fourth, the essentials stated above are not shown to exist in any marked degree, and in such instances the evidence given should have had little weight with the jury in establishing the value of the property, yet with the large discretion given to the trial judge we are unable to say that he erred in reaching his conclusion.

The Court we think erred in its ruling upon the fifth exception in admitting evidence of the possibility of a car line upon Twenty-fifth Street when opened and in allowing the witness to state how he would proceed to obtain such car

line if the property of the petitioners was owned by him. The possibility of a car line upon said street was altogether too speculative to be admitted in evidence effecting the issues before the jury, and we can not conceive how such statement of the witness could have reflected upon the issues.

The evidence admitted under the sixth exception was in our opinion properly admitted, and we find no error in the action of the Court in admitting the evidence mentioned in the seventh and eighth exceptions, or in its rulings upon the ninth, twelfth, thirteenth and fourteenth exceptions.

The sixteenth exception is to the ruling of the Court upon a motion for a new trial and to set aside the inquisition.

The grounds upon which the motion is made are those usually stated in a motion for a new trial, and it is in fact nothing more than a motion for a new trial, and it is so regarded by the counsel for the petitioners, in their written brief, and as there is nothing to distinguish such motion from like motion in other cases, we must hold to the well-settled law of this State that no appeal lies to this Court from the action of the lower Court in refusing to grant said motion. *Poe's Practice,* section 349, and cases there cited.

Because of the errors above mentioned, the judgment in this case will be reversed.

*Judgment reversed and new trial awarded,*
*with costs to the appellants.*