## LUSTINE ET AL. *v.* STATE ROADS COMMISSION
[No. 175, September Term, 1957.]

*Decided June 16, 1958.*

The cause was argued before HENDERSON, HAMMOND,

Prescott and Horney, JJ., and Macgill, J., Associate Judge, Fifth Judicial Circuit, specially assigned.

*Harry A. Boswell,* with whom was *Samuel J. DeBlasis* on the brief, for appellants.

*T. Thornton Murray,* Special Attorney for State Roads Commission, with whom were *C. Ferdinand Sybert,* Attorney General, *Joseph D. Buscher,* Special Assistant Attorney General, and *Herbert W. Reichelt,* Special Attorney for State Roads Commission, on the brief, for appellee.

Macgill, J., by special assignment, delivered the opinion of the Court.

In this case the lessor landowner and the lessee, taking issue with the trial court on certain rulings in a condemnation proceeding instituted by the State Roads Commission, appeal from the judgment entered on the jury's inquisition in the Circuit Court for Prince George's County.

The landowner had title to a parcel of land containing 53.36 acres and eight adjacent lots in a subdivision known as "Dupont Heights", in the Sixth Election District of Prince George's County. The 53.36 acre parcel had no frontage on a public road but was served by a road or lane, the status of which is not clear. On or about November 9, 1956, an agreement was executed between the lessor and the lessee whereby the 53.36 acre parcel was leased for a period of three years, for the purpose of mining sand and gravel. The agreement provided for the payment of $1500.00 per acre for the gravel removed, and further provided that the premises would be left "graded for subdivision development in accordance with a grading plan submitted by the lessor and accepted by the lessee". Areas where such grading had been completed could be released to the lessor prior to the expiration of the three-year term.

On January 10, 1957, the State Roads Commission instituted proceedings to condemn, for a controlled access arterial highway, a strip of the property containing 10.30 acres in fee and something less than an acre for easements. The taking left on the north side of the highway approximately 33.44 acres,

and on the south side approximately 10.19 acres, in addition to a separate triangular parcel containing .55 of an acre. Portions of the eight lots were also within the lines of the right-of-way.

The appellants question the action of the trial court in sustaining exceptions to certain interrogatories addressed to the appellee, but they have not included in the record extract the interrogatories and exceptions referred to, despite the requirements of Rule 828 of the Maryland Rules. This Court has held that it will not consider matters which have not been presented in compliance with this rule. *Naughton v. Paul Jones & Company,* 190 Md. 599, 604, 605. Since, however, for the reasons hereinafter stated, this case must be retried, we have examined the interrogatories in the record and are of the opinion that the trial court was correct in its action. The interrogatories excepted to were entirely too general and vague for the framing of answers and in some respects went beyond the rights designed to be afforded by their use.

The appellants contend that there was error in refusing to allow them, during the course of the trial, and as part of their case before the jury, to attempt to show that the determination of necessity and the denial of access by the State Roads Commission was arbitrary, capricious or unreasonable. We find no merit in this contention. Such questions, at most, were for the court, and not the jury, to pass upon. *Hyattsville v. Washington, Westminster & Gettysburg Railroad Company,* 122 Md. 660, *Johnson v. Gas & Electric Company,* 187 Md. 454, *Nichols on Eminent Domain,* 3d Ed. Sec. 4.105 (5), *McCarthy, et al., v. Bloedel Donovan Lumber Mills,* Circuit Court of Appeals, Ninth Circuit, 39 F. (2d) 34, *St. Clair County Housing Authority v. Quirin* (Ill.), 39 N. E. (2d) 363, *Wilton v. St. Johns County* (Fla.) 123 So. 527, 65 A. L. R. 488, and *Davidson, et ux., v. Commonwealth, ex rel., State Highway Commission* (Ky.) 61 S. W. (2d) 34.

The appellants complain that the appellee was permitted to introduce hearsay testimony tending to show the existence of a valid right-of-way from the property to the Marlboro Pike. The testimony in question was as follows:

"By Mr. Murray: (on direct examination)

Q. Mr. Bojanowski, are you familiar with the access that that property had prior to the State taking it?

A. Well, the only access to that that we found in going over it with the former owner was through this land—

Mr. DeBlasis: I object. He is beginning to tell us what Mr. Brooks said.

Mr. Murray: He is not going to say what Mr. Brooks said. He said the only access they were able to find after talking to Mr. Brooks, Your Honor.

The Court: Go ahead.

The Witness: (continuing)—on physical inspection was this lane to Marlboro Pike which is approximately 2800 feet from the right-of-way line."

"By Mr. Boswell: (of the same witness, on cross-examination)

Q. Could you tell me how you determined that this right-of-way was in use for a number of years?

Mr. Murray: Objection.

The Court: Overruled.

The Witness: I talked with Mr. Brooks—

Mr. Boswell: I move anything he says in this regard be stricken as hearsay.

Mr. Murray: He asked him for it.

The Court: You asked it and now you have got it."

We think that the answers of the witness on direct examination, even if it is assumed that they amounted to hearsay, tended to establish no more than that there was a road from the property to the Marlboro Pike. There was no implication, at that stage, that the road had the status of a valid right-of-way. The answer of the witness to the question put to him on cross-examination was clearly responsive and the court did not err in refusing to strike it. On the basis of the answer a motion could have been made to strike any preceding testimony of the witness tending to establish the lane as a valid right-of-way, but this was not done.

The appellants complain that one of their experts was not permitted to testify that he considered income from the lease in placing his value on the property. The witness was permitted to testify, and properly so, as to the rental of $1500.00

per acre, as provided for in the lease. He was not permitted, in describing how he arrived at a valuation of the lease, to testify that he considered the "income stream" of $1500.00. It may be that this choice of words, if taken out of context, was unfortunate as indicating business profits, although the witness was entitled to state that he considered such as a factor in reaching his valuation. *State Roads Commission v. Novosel,* 203 Md. 619, 624. We think that this testimony was admissible and that there was error in excluding it. *Pumphrey v. State Roads Commission,* 175 Md. 498, 509.

Appellants make a point of the refusal of the trial court to permit Mr. Woodward, President of the corporate lessee, to produce the records of the corporation kept in the regular course of business and under his supervision, relative to the mining operations on the property in question. Mr. Woodward, on cross-examination, was asked how much gravel had been taken out of the property. He answered that he was unable to give the approximate number of tons without consulting the records. We gather that, on re-direct examination, it was intended to give him an opportunity to follow up his answer. If so, it was error to exclude the books of the corporation offered for that purpose.

The appellants object to the action of the trial court in ruling out testimony by their experts as to certain sales of what they considered comparable properties. One of the appellants' witnesses, Mr. Michael T. Hagen, attempted to establish as comparable property a forty-two acre parcel of land lying about one-half of a mile from the subject property, which had formerly been used as a gravel pit, but which had been graded for subdivision purposes before it was sold. The same witness testified as to an adjacent parcel of seventeen acres called "Crozier Gardens", which had been "raw land" prior to its sale for subdivision purposes, but which was served by a dead end road. We think that the court, in ruling out testimony as to the sales prices of these properties, as not being comparable, was unduly restrictive. We are aware that there is considerable latitude in the exercise of discretion by the lower court in determining comparable sales. *Patterson v. Mayor and City Council of Baltimore,* 127 Md. 233, 241, *Williams v. New*

*York, P. & N. R. Company,* 153 Md. 102, 108. It should be borne in mind, however, that real estate parcels have a degree of uniqueness which make comparability, one with the other, in a strict sense, practically impossible. We think it the better policy, where there are any reasonable elements of comparability, to admit testimony as to the sales, and leave the weight of the comparison for the consideration of the jury, along with such distinguishing features as may be brought out on cross-examination or otherwise. *Forest Preserve District of Cook County v. Eckhoff,* 372 Ill. 391, 24 N. E. 2d. 52. Cf. *Turner v. State Roads Commission,* 213 Md. 428, 431.

Lastly, the appellants complain of the trial court's refusal to instruct the jury that, in determining the fair market value of the land, it could consider the highest utility for which it would be available in "the reasonably foreseeable future" rather than, as the court instructed, the highest utility for which it would be immediately available as of the time of the taking. It is true that in *Pumphrey v. State Roads Commission, supra,* this Court held that "In determining the fair market value of the land, consideration may be given to any utility to which it is adapted and for which it is immediately available." Possibly the word "immediately" was misleading, if applied literally to the situation in the case at bar. We held recently that "evidence of a reasonable probability of a change in zoning classification within a reasonable time may properly be admitted and its influence upon market value at the time of the taking may be taken into account." *State Roads Commission v. Warriner,* 211 Md. 480, 484.

In this case the testimony revealed that the subject property adjoined, in part, subdivision property. It is evident that it was contemplated that at the expiration of the agreement for the removal of gravel the land was to be left in a state suitable for subdivision and building development. The land would not have been "immediately available," in the dictionary sense, for that purpose at the time of the taking but a prospective purchaser would doubtless take into consideration the use to which it could be put in the near future. While a comparison cannot fairly be made between the prices of subdivided and un-subdivided lands, *State Roads Commission v. Wood,* 207 Md.

369, 373, we think that the jury might properly have taken into consideration, in determining present fair market value, the effect upon such value of the "reasonable probability" of the use of the land for subdivision development "within a reasonable time." *Virginia Electric & Power Company v. Marks,* 195 Va. 468, 78 S. E. 2d 677, *People v. Ocean Shore Railroad,* 32 Cal. 2d. 406, 196 P. 2d. 570, *Olson v. United States,* 292 U. S. 246, 78 L. Ed. 1236, *Nichols on Eminent Domain,* 3d Ed., Sec. 12.3142 (2). Of course, the condemnation was of the whole interest, both of the lessor and lessee, and the fact that there was an outstanding lease would not affect the value of the property or its "immediate availability" for the highest utility to which it may be put, but only the division of that value as between the lessor and lessee.

For the reasons stated, the judgment must be reversed and a new trial awarded.

> *Judgment reversed, with costs to appellants, and case remanded for a new trial.*