LUSTINE ET AL. *v.* STATE ROADS COMMISSION

[No. 124, September Term, 1959.]

*Decided January 20, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Samuel J. DeBlasis,* with whom was *Harry A. Boswell* on the brief, for appellants.

*T. Thornton Murray, Special Attorney,* with whom were *C. Ferdinand Sybert, Attorney General of Maryland,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is the second appeal by the property owners in a condemnation case wherein the State Roads Commission (Commission) is taking property for a controlled access arterial highway in Prince George's County. The facts are accurately and adequately stated in the first appeal, *Lustine v. State Roads Comm.,* 217 Md. 274, 142 A. 2d 566; so, we shall proceed immediately to a determination of the assignments of error presented by the appellants.

I.

The appellants first contend that a motion to dismiss the petition for condemnation made by them should have been granted; because the original petition alleged that the purpose of the taking was for an "Expressway," when the actual purpose was for a "controlled access arterial highway." The contention is without merit. Although it was clearly shown in the first trial of the case that the purpose of the acquisition was to construct a controlled access arterial highway and this fact was specifically noted in our opinion in the prior appeal, no question was raised concerning the same either in the first trial or on the appeal. If the inadvertent

use of the term "Expressway" in the petition created any material problem to the appellants in the trial of the case—a possibility which is indeed quite remote—such problem could easily have been solved by a motion to require the Commission to amend the petition, and then, if the circumstances warranted the same, the trial court could have granted a continuance so that no prejudice would have resulted to the appellants' case; but certainly, it was no ground to dismiss the petition.

## II, III and V.

The appellants here attempt to raise again an alleged arbitrary and capricious denial to them of access to the new road, and they further claim that the trial court erred in unduly restricting their testimony concerning said alleged arbitrary and capricious action. We have examined the testimony which the appellants claim establishes such action on the part of the Commission, namely, pp. 2, 3 and 6-10 of the record extract, and we fail to discover any arbitrary, capricious or unreasonable conduct on the part of the Commission. Cf. *Langley v. State Roads Commission,* 213 Md. 230, 237, 131 A. 2d 690. With reference to the claim that the trial court unduly restricted the appellants' questioning concerning the alleged arbitrary action of the Commission, the appellants do not print a sufficient amount of the transcript in the record extract to pin-point and show exactly what they were prevented from showing. However, the short answer to all three of the contentions here being considered, II, III and V, is that the alleged arbitrary denial of access was raised, and was decided adversely to the appellants, in the former appeal (217 Md. at page 278); consequently, it is not available in the present appeal. *Fid.-Balto. Bank v. John Hancock,* 217 Md. 367, 372, 142 A. 2d 796.

## IV.

The method in which the appellant states his fourth claim of error makes it difficult to discuss. The Commission had called Harry A. Boswell, apparently an officer of one of the corporate appellants, as an adverse party under the pro-

visions of Code (1957), Article 35, Section 9. Counsel for the appellants objected and then withdrew the objection. The witness was questioned for a short while and then counsel for the appellants objected to a question asked upon the ground that opposing counsel was attempting to impeach his own witness. The appellants in their brief then say this testimony "was therefore extremely prejudicial . (E 11-13 * * *)." An examination of pages 11 to 13, both inclusive, of the record extract discloses colloquy between counsel for the respective parties and the court; and the overruling of an objection by counsel for the appellants to the following question: "For what purposes did you make these appraisals [appraisals near the property being condemned in the instant proceedings] in 1953?" The record extract fails to show any answer to the question, but we shall supply it from the transcript: "The State Roads Commission assigned to me the appraisal of properties to determine the value of the property." It is obvious from what we have just said that there is little to show whether the answer to this one question was admissible or inadmissible, but, if we assume that it was inadmissible, there is nothing to show that in this one question and its answer there was prejudicial error. *Hance v. State Roads Commission,* 221 Md. 164, 156 A. 2d 644. The appellants attempt, however, to show such prejudicial error by coupling this question and its answer to what they claim were improper and harmful remarks made by counsel for the Commission during argument, but there was no objection made to the remarks, nor a motion for the court to instruct the jury to disregard them, nor a motion for a mistrial; hence, this question is not properly before us. Rule 885. The appellants also fail to show error here.

## VI.

During the course of his instructions to the jury, the trial judge informed the jury that the measure of damages to which the appellants were entitled was the difference between the fair market value of the whole tract before the taking and the fair market value after the taking, "as indicated by the formula that has been followed basically by all of these apprais-

ers," and in considering the value "consideration may be given * * * to the highest utility to which the property is adapted and for which it is available in the reasonably foreseeable future." There were additional instructions concerning damages, but the quoted portion will suffice for our instant inquiry. At the conclusion of the charge, appellants' counsel told the court that he had requested a prayer or instruction "to the effect that the measure of compensation for the property taken for public use is the actual market value of the property depending upon the uses for which it is available and any special utility tending to enhance its value," and the court replied that it felt "that that in substance" had been included in the charge. Counsel objected and the appellants assign this action of the trial court as prejudicial error. Merely a cursory reading of the quoted portion of the court's instructions shows that the appellants' request had been fairly—and, perhaps, more favorably to the appellants than their request—covered by the court's charge. There is no obligation upon the trial judge to grant a prayer, or to give an instruction, in any specific form or terms, provided the matter is fairly covered by the instructions actually given. Rule 554 b 1; *Ager v. Baltimore Transit Co.,* 213 Md. 414, 425, 132 A. 2d 469. We find no error here.

## VII.

There was a request made by the attorney representing all of the defendants who were actively participating in the trial of the case that he be granted eight peremptory challenges of jurors in place of the usual four allowed in civil cases in this jurisdiction. This request was denied by the court, and the appellants assert this was an abuse of the trial court's discretion. Rule 543 a 4 permits the trial court to grant additional peremptory strikes or challenges whenever it appears that the trial of an action "involves two or more plaintiffs or two or more defendants having adverse or hostile interests or involves multiple parties and claims, including third-party claims * * *." In this case, the same counsel represented all the parties defendant who were conducting the trial, there were no hostile or adverse interests claimed, and the only

reason assigned for the request was that the attorney wanted to eliminate as many women as possible from the panel. It is difficult to see how this could seriously be urged as an abuse of the trial court's discretion. We hold that no error has been shown here.

## VIII.

Rule 828 provides in part that the appellant shall cause to be printed an extract which "shall contain such parts of the record as may reasonably be necessary for the determination of the questions presented by the appeal * * *." (Parenthetically, it may be noted that it is extremely difficult to digest a record extract that has no reference as to who is testifying at any particular point, except the index, where there are, as here, a number of occasions where the testimony of two witnesses, and possibly more, are on the same page, separated only by asterisks.) While this assignment of error does not, we think, comply with Rule 828, we shall attempt to state it, with the assistance of reading part of the transcript, without examining all of its several hundred pages.

The inquiry involves a question of the admissibility, *vel non,* of a very small portion of an expert witness' testimony. Charles E. Dixon, an expert appraiser on valuation, was offered by the appellants and permitted to give his opinion as to the damages to the appellants resulting from the taking. The property, as noted in the statement of facts in the prior appeal, contained certain sand and gravel deposits thereon. As the appellants could not, or did not desire to, qualify him as an expert on sand and gravel deposits, and as he had made no borings, etc., to determine the amount of the sand or gravel, the court refused to permit him to testify in detail concerning the gravel deposits. On cross-examination, he was asked, "Now did you consider gravel deposits on the *entire remaining part* [apparently the part remaining after the taking] of the property * * *?" (Italics supplied.) He replied that he did and it looked to him as though only about one-fifth of the whole fifty-three acres owned by the appellants had been "worked over" for gravel. Counsel for the appellants apparently thought that opposing counsel, by the asking of this

question, had opened the door for this witness to testify in detail concerning the amount of sand and gravel deposits on the property taken and their values, and asked the witness, "* * * did you consider [the sand and gravel deposits] in arriving at the evaluation the amount of the taking by the State?" The witness replied, "Yes, sir, because, there is gravel underneath what they are taking." At this point, counsel for the Commission objected on the ground that, although the court had offered the appellants an opportunity to qualify the witness as an expert on sand and gravel deposits, they had declined to do so, and on the further ground that the witness had previously testified that he had made no borings (and had had none made for him), etc., to ascertain personally the amount of the sand and gravel deposits. Obviously, the witness was not qualified to testify as to the amount of the sand and gravel deposits on the land taken; hence, the objection was properly sustained.

*Judgment affirmed, with costs.*