JOHN F. MILLER, III ET AL. *v.* STATE ROADS
COMMISSION OF THE STATE HIGHWAY
ADMINISTRATION

[No. 77, September Term, 1977.]

*Decided October 18, 1977.*

The cause was argued before MORTON, THOMPSON and LISS,
JJ.

*R. Edwin Brown,* with whom were *Dennis M. Ettlin* and
*Brown & Sturm* on the brief, for appellants.

*Frank W. Wilson, Special Attorney,* with whom were *Francis B. Burch, Attorney General,* and *Nolan H. Rogers, Assistant Attorney General,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

On June 6, 1974, appellee, State Roads Commission of the State Highway Administration, acting for and on behalf of the State of Maryland pursuant to the provisions of Maryland Code (1957, 1976 Cum. Supp.) Art. 89B, §§ 10 through 20, filed a petition and plat in the Land Acquisition Docket of the Circuit Court for Montgomery County, together with a check for $60,400, representing appellee's estimate of the just compensation due the appellants, John F. Miller, et al., for land to be taken by the appellee. The petition and plat were in support of the acquisition by the appellee of 22.089 acres of land owned by the appellants, located on Interstate 270 south of Ridge-Comus Road in Montgomery County, zoned on the date of valuation as R-R (rural residential). The land was to be used as a safety rest area for the benefit of those traversing the highway.

At the request of the appellants, the matter was referred to the Board of Property Review [1] for a determination of the value of the property taken, without prejudice to the appellants' right to have the matter ultimately determined by a jury. The Board returned an award substantially in excess of the funds deposited in court by the appellee which promptly requested the reinstatement of the condemnation proceedings. Appellee filed its formal petition for condemnation, appellants answered and the case came on for trial before a jury in the Circuit Court for Montgomery County (Mathias, J. presiding). After evidence had been heard by the jury, it returned an inquisition in the amount of $62,000. It is from this judgment that this appeal is filed.

Two issues are raised by this appeal which may be stated as follows:

(1) Did the trial court abuse its discretion by refusing to

---

1. The Board of Property Review Procedure is governed by Maryland Rule U 27.

permit appellants' experts to testify concerning comparable sales of land, industrially and commercially zoned?

(2) Did the trial court commit reversible error in limiting cross-examination of the appellee's valuation witnesses?

(1)

Testimony offered at the trial disclosed that the property condemned was part of a 99-acre tract purchased by the landowners in 1956 for investment purposes. A portion of the land had been conveyed to adjoining landowners. The tract is located approximately 30 miles north of Washington, D. C. in a rural area but fronts along Interstate 270. The testimony disclosed that there had been development along Interstate 270 several miles from the property here condemned where, prior to 1969, rezoning had been permitted from R-R to light industrial use, as a result of which buildings had been erected by I.B.M., Comsat, Fairchild-Hiller, National Bureau of Standards and the Atomic Energy Commission.

On the date of valuation, the subject property was zoned R-R. That classification has since been redesignated to R-200 which provides for single family residential development with a minimum lot size of 20,000 square feet. On the date of valuation, however, there was pending before the Montgomery County Council a sectional map amendment which proposed to down-zone a large portion of Upper Montgomery County, including appellants' property, to the Rural Zone, *i.e.*, for single family residential development with minimum lot size of five acres each. That amendment was approved on August 21, 1974 and the property was down-zoned as of that date.

The State offered the testimony of two expert real estate appraisers who stated that the highest and best use of the subject property as of the date of valuation was for single family residential development in the five-acre Rural Zone. Their valuations ranged from $2500 to $2750 per acre, plus a minimal amount for consequential damages to the remaining property: their total assessments of the value of the property taken amounted to approximately $60,000.

The appellant offered three witnesses, the first of whom gave his estimate as to the projected damage to the land retained by the appellants by reason of the use to be made by the appellee of the land taken. It was his opinion that because of the noise, lighting, loss of privacy, and other annoyances which might be expected from a rest area that the value of the remaining land would depreciate in value if utilized for residential development.

The appellants next offered the testimony of two expert real estate appraisers, James G. Trout and Oscar H. Beasley, Jr. Mr. Trout expressed his opinion that the highest and best use of the land was either in the R-R zone, its present zoning, or in the I-1 zone (light industrial zoning). The land was, in his opinion, "in transition to the highest and best use" and could eventually be expected to be rezoned to I-1. Mr. Beasley in essence gave the same testimony, contending that the highest and best use of the property was "a property in transition, subject to the existing zoning." Their valuations ranged from $4500 to $6000 per acre plus substantial sums for damage to the remaining property by reason of the taking for the purpose of the establishment of the rest area.

In the course of their experts' testimony in chief, appellants sought to elicit evidence of allegedly comparable sales of industrial and/or commercial property to support their theory of the probability of rezoning. The trial court sustained the objections of the appellee to that line of questioning. Appellants contend that this amounted to reversible error. We do not agree.

It is conceded that in condemnation cases the trial judge has wide discretion in determining what sales are reasonably comparable, leaving the weight of the comparison for the consideration of the jury. *State Roads Comm'n v. Parker*, 275 Md. 651, 344 A. 2d 109 (1975); *Bergeman v. State Roads Comm'n*, 218 Md. 137, 146 A. 2d 48 (1958); *Lustine v. State Roads Comm'n*, 217 Md. 274, 142 A. 2d 566 (1958). The Court of Appeals, in *Patterson v. Mayor and City Council of Baltimore*, 127 Md. 233, 96 A. 458 (1915), said, "In regard to the degree of similarity which must exist

and the nearness in respect of time and place no general rules are laid down, and as the trial judge is usually conversant with such matters they must be left largely to his discretion." *Id.* at 241, 96 A. at 461.

That discretion is not, however, unlimited. In *Lustine, supra,* the Court of Appeals in discussing the limitations on the trial court's discretion as to the admissibility of comparable sales said, "We think it the better policy, where there are any reasonable elements of comparability, to admit testimony as to the sales, and leave the weight of the comparison for the consideration of the jury, along with such distinguishing features as may be brought out on cross-examination or otherwise." (citations omitted) *Id.* at 281, 142 A. 2d at 569.

It is to be noted, however, that the sales were offered not as comparable sales pertinent to value, but to show a reasonable probability that a change in zoning would occur in the foreseeable future. Appellants cite in support of their position *State Roads Comm'n v. Warriner*, 211 Md. 480, 484, 128 A. 2d 248, 250 (1957), in which the Court of Appeals for the first time recognized the rule that "evidence of a reasonable probability of a change in zoning classification within a reasonable time may properly be admitted and its influence upon market value at the time of the taking may be taken into account." (citations omitted)

Appellants complain that the trial judge erred in refusing to permit the jury to hear evidence of the sales, subject to change in zoning, of other land in the vicinity to support their experts' opinion that there was a reasonable probability of a change of zoning in the future. A review of the sales offered, however, clearly establishes that they were not comparable or relevant to appellants' contention. Two of the properties were sold to Comsat, subject to their being rezoned to light industrial use. Additionally, the sales were remote in time and located approximately $2^1/_2$ miles from the appellants' property. The third sale was of a mere two-acre tract zoned light industrial at the time of the sale. The fourth sale was also disproportionate in size, consisting of $1^1/_4$ acres of land zoned light industrial. The fifth sale

consisted of only three acres zoned light industrial; the final sale was for 36 acres of light industrial land located in the industrial corridor between Clarksburg and Germantown. None of the properties involved would in any way have supported the opinion of the experts that there was a likelihood of rezoning in the reasonably foreseeable future. The sole testimony to support such a conclusion by the appraisers was a bald assertion that the land was "in transition" and that the zoning of the land was likely to be changed to light industrial zoing in five years. Appellants failed to offer any testimony to support their theory of imminent rezoning. They made no contention that there was a mistake in the original zoning of the subject property. They produced no evidence of recent rezonings or changes in the use of property in the immediate area which would support a finding of the type of change in the character of the area which would justify rezoning. In fact, the record discloses there had been no rezoning in that area since November of 1969.

The conclusions to be drawn from the status of this property at the time of valuation dispute any suggestion that the property was likely to be rezoned to light industrial in the foreseeable future. On the date of valuation the property was zoned rural-residential. Within sixty days thereafter, proposed amendments to the zoning map were approved. This down-zoned a considerable portion of Upper Montgomery County, including the appellants' property, to the Rural Zone. All of the evidence pointed to a decision by the zoning authorities of Montgomery County to cut off the industrial corridor along Interstate 270 at Clarksburg, some 2 miles south of the subject property.

We believe this case is governed by the principles enunciated by the Court of Appeals in *Holy Trinity Church v. State Roads Comm'n*, 249 Md. 406, 240 A. 2d 255 (1968). There the State Roads Commission sought condemnation of a tract of land, part of which was being used as a cemetery by reason of a non-conforming use. The Church contended that the remainder of the tract should be valued as if it were also devoted to cemetery use even though at the time of

valuation it was not so zoned. The Court pointed out that in order to use the remainder of the land for this purpose the Church would be required to obtain the permission of the Board of Zoning Appeals of Howard County. In affirming the inquisition of the jury in that case the Court said,

> "In any event the church has not shown nor has it made any attempt to show that there exists any reasonable probability that a petition to extend the non-conforming use would be granted by the Board of Zoning Appeals within a reasonable time after the taking, or to show that the original zoning was erroneous. The burden of making such a showing rests with the church. *State Roads Comm'n v. Warriner* [*supra*]; *United States v. Certain Land in Baltimore County, Md.,* 209 F. Supp. 50 (1962)." 249 Md. at 413, 240 A. 2d at 258-59.

In the similar case of *Hutchison v. Baltimore Gas & Electric,* 241 Md. 329, 332, 216 A. 2d 573, 575 (1966), the Court of Appeals said,

> "We think the trial judge was correct in excluding the testimony of the witness Helfrich. As pointed out by the appellant, it is permissible for an appraiser, when valuing property in a condemnation case, to consider the probability of a tract being rezoned to a higher or lower classification in the reasonably near future. *Bergeman v. State Roads Comm., [supra]; Lustine v. State Roads Comm. [supra]; State Roads Comm. v. Warriner [supra].* However, it is manifestly improper to allow a real estate appraiser in such a case to value property as if it were in fact already zoned to the higher classification. The reason for this was suggested in Mr. Helfrich's own testimony, *i.e.,* change in zoning is a risky and uncertain matter and a purchaser in the open market would certainly not pay the same amount for land which has the possibility of being rezoned to a higher (more valuable) classification tha[t] he would be

willing to pay if the change in zoning had already been accomplished."

We conclude that the trial court did not err in refusing to admit the testimony as to the alleged comparable sales offered by the appellants' experts for the reasons that the sales were disparate in size and location, too remote in time, and did not tend to substantiate the experts' conclusion that there was a reasonable likelihood of rezoning within the foreseeable future. We find no abuse of the trial court's discretion.

(2)

We likewise find no error in the alleged restriction of cross-examination of the appellee's witnesses. Our reading of the record makes it clear to us that appellants sought by indirection to get before the jury testimony concerning sales of land ultimately zoned light industrial which appellee's witnesses did not consider in their valuation of the appellants' land because they found the tracts not to be comparable. It is noteworthy that when appellants offered the same testimony in their own case in chief the trial court sustained appellee's objections and refused to permit the jury to hear the evidence concerning these sales. We have already determined that these rulings by the trial court were not an abuse of its discretion.

The Court of Appeals discussed the scope of cross-examination of an expert witness in *State Roads Comm'n v. Wyvill,* 244 Md. 163, 179, 223 A. 2d 146, 154 (1966), where it said,

"This Court has held that 'it is peculiarly appropriate to permit cross-examination as to the reasons for an expert's opinion.' *Plank v. Summers,* 205 Md. 598, 607, 109 A. 2d 914, 918 (1954). The rule limiting cross-examination to the points on which the witness testified on direct 'does not go to the extent of restricting the cross-examination of the witness to the specific details inquired into on

direct examination, but permits full inquiry into the subject matter entered into.' *Williams v. Graff,* 194 Md. 516, 522, 71 A. 2d 450, 452-53 (1950). These general principles pertaining to the scope of cross-examination have been applied in other jurisdictions to situations closely analogous to the present case.

"In *Templeton v. State Highway Comm'n,* 254 N. C. 337, 340-41, 118 S. E. 2d 918 (1961), it was held that the lower court committed prejudicial error in not permitting cross-examination of an expert witness in a condemnation proceeding with respect to sales prices of nearby property to test his knowledge of values and for the purpose of impeachment, even though evidence as to comparable sales was not admissible for the purpose of fixing value. *State Highway Comm'n v. Daniels,* 235 Miss. 185, 108 So. 2d 854 (1959), is to the same effect. The court held that while the record prices paid for other lots could not be stated, evidence as to the price of similar land was admissible to weaken opinion values. In *People v. Wasserman,* 50 Cal. Rptr. 95, 106-07 (Cal. App. 1966) ... [t]he appellate court said: 'A wide latitude should be allowed in the cross-examination of expert witnesses as to value for the purpose of testing their knowledge, judgment, bias and the validity of the opinions.' "

Our reading, not only of the printed record extract of the testimony and cross-examination of the appellees' witnesses, but of the entire transcript of their testimony, convinces us that the trial court gave counsel for the appellants wide latitude in cross-examination in order to assist the jury in testing the knowledge, judgment, bias and the validity of the opinions of the expert witnesses as to the value of the property taken. The sole restriction on cross-examination of these witnesses was with reference to the sales which appellants concede were not comparable as to value but

should have been permitted in support of their contention that there was a reasonable probability of rezoning in the foreseeable future. Appellants had not yet offered a single witness in support of that theory and no foundation had been laid for the relevance of cross-examination on this basis. We find no abuse of the trial court's discretion in its rulings on the cross-examination of the appellee's witnesses.

*Judgment affirmed.*
*Costs to be paid by appellants.*