GRANGE MUTUAL CASUALTY COMPANY, Appellant,

v.

SMITH; Waterman et al., Appellees.

[Cite as *Grange Mut. Cas. Co. v. Smith* (1992), 80 Ohio App.3d 426.]

Court of Appeals of Ohio,
Washington County.

No. 91 CA 31.

Decided June 2, 1992.

*Mollica, Gall, Sloan & Sillery Co., L.P.A.*, and *Andrew J. Mollica*, for appellant.

*Barkan & Neff* and *Sanford A. Meizlish*, for appellees.

HARSHA, Judge.

This is an appeal from a judgment entered by the Washington County Court of Common Pleas declaring that at the time of an automobile accident, defendant Ronald D. Smith was the owner of the automobile and his insurance policy with Grange Mutual Insurance Company, plaintiff-appellant, was in force.

Appellant assigns the following errors:

"I. The court erred in applying R.C. 1302.42(C) instead of R.C. 1302.42(B).

"II. The court misapplied R.C. 1302.42(C) even if it controls."

On October 16, 1989, appellant filed a complaint for declaratory relief which named Ronald D. Smith as a defendant. Appellant's complaint prayed for a judgment declaring that: (1) pursuant to R.C. 1302.42, Smith was not the owner of a certain automobile as of October 12, 1985; and (2) Smith's automobile insurance policy with appellant was no longer in force after October 12, 1985 because its terms were only applicable as long as Smith owned the automobile. The trial court subsequently granted a motion of appellees David and Lucy Waterman to intervene in the case as defendants, and they filed an answer to appellant's complaint which demanded that the trial court declare that: (1) Smith was the owner of the automobile in question at the time of an October 15, 1985 accident; and (2) Smith's automobile insurance policy, issued by appellant, was in full force and effect at the time of the October 15, 1985 accident. The trial court overruled the parties' motions for summary judgment, and the case proceeded to trial. At trial, the following pertinent evidence was adduced.

In early October 1985, Smith lived with his stepdaughter, Kathy Palmer, n.k.a. Gossett. When she lived with Smith, she drove a 1971 Chevrolet Impala owned by Smith. The car was insured by a policy issued by appellant.

Palmer moved out of Smith's house but continued to keep the 1971 Chevrolet Impala in her possession. Shortly after moving out, Palmer became interested in purchasing the car from Smith. Prior to October 12, 1985, Smith entered into an agreement with Palmer in which he would sell the 1971 Chevrolet Impala to her for $1,000.

In order to obtain the $1,000, Palmer had to apply for a loan from the Bartlett Farmers Bank. On October 12, 1985, the loan was approved. The note and security agreement reflecting the loan listed the borrowers as Smith and Palmer and both signed their names to the instrument. However, according to their testimony at trial, Smith only signed the documents as a co-signer in order to facilitate Palmer's chances of getting a loan. Smith was not borrowing money from the bank in order to purchase his own car; in fact, only Palmer made the installment payments on the loan. On October 12, 1985, Palmer informed Smith that the loan had been approved, and Smith told her to keep the car, which was already in her possession and had been in her possession for some time.

On October 15, 1985, Smith had a document indicating his transfer of the car to Palmer notarized. In this instrument, Smith listed the transaction as a "gift." Smith did not have the title to the car transferred to Palmer on this date. On the evening of October 15, 1985, Palmer's fiancé, James Gossett, whom she subsequently married, was driving the 1971 Chevrolet Impala when it was involved in an accident with a car occupied by appellees David and Lucy Waterman. On November 25, 1985, Palmer signed an application for certificate of title for the car, listing its receipt as a "gift" from Smith. Both Smith and Palmer testified at trial that the transaction was a sale rather than a gift.

Smith testified that his understanding of the transaction was that the sale would not be complete until he received his money from Palmer, and that he believed that he did not receive the $1,000 due him until sometime after the accident. Smith further testified that he did not believe that he had received the money when he had the title notarized, *i.e.*, on October 15, 1985, the date of the accident. Palmer testified that although she could not recall the exact date, she probably gave Smith the money prior to the date of the accident.

On August 29, 1991, the trial court issued an opinion which determined: (1) the transfer of the 1971 Chevrolet Impala from Smith to Palmer was a gift and not a sale; (2) since Palmer already had possession of the car at the time of the transfer, R.C. 1302.42(C) applied to determine title for insurance purposes rather than R.C. 1302.42(B); (3) pursuant to R.C. 1302.42(C), Smith still owned the 1971 Chevrolet Impala on the date of the accident; and (4) Smith's insurance policy with appellant was in effect on the date of the accident. On September 9, 1991, the trial court entered a judgment declaring

that at the time of the accident, Smith owned the 1971 Chevrolet Impala and appellant's automobile insurance policy was in force.

█ Appellant's first assignment of error asserts that the trial court erred in applying R.C. 1302.42(C) instead of R.C. 1302.42(B). Three elements are necessary to obtain a declaratory judgment: (1) a real controversy between adverse parties exists; (2) which is justiciable in character; and (3) speedy relief is necessary to the preservation of rights which may be otherwise impaired or lost. *Fairview Gen. Hosp. v. Fletcher* (1992), 63 Ohio St.3d 146, 148–149, 586 N.E.2d 80, 82–83; *Buckeye Quality Care Centers, Inc. v. Fletcher* (1988), 48 Ohio App.3d 150, 154, 548 N.E.2d 973, 976. The determination of a declaratory judgment action is often one of both law and fact. See, *e.g., Fuller v. German Motor Sales, Inc.* (1988), 51 Ohio App.3d 101, 103, 554 N.E.2d 139, 141–142; R.C. 2721.10. Appellant's first assignment of error claims legal error by the court below in applying R.C. 1302.42(C) rather than R.C. 1302.42(B).

R.C. 1302.42 provides in part:

"(B) Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading:

"(1) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

"(2) if the contract requires delivery at destination, title passes on tender there.

"(C) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

"(1) if the seller is to deliver the document of title, title passes at the time when and the place where he delivers such documents; or

"(2) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."

█ R.C. 1302.42 codifies Section 2–401 of the Uniform Commercial Code in Ohio. The ownership of personal property, including motor vehicles, for the purpose of determining whether the insured who sold the automobile was still the owner at the time of an accident, is governed by UCC 2–401. Anderson, Uniform Commercial Code (3 Ed.1983) 517–519, Section 2–401:7. The factual

situations in subsections (2) and (3), R.C. 1302.42(B) and (C), upon which passage of title turn actually base the test upon the time when the seller has finally committed himself in regard to the specific goods; in a "shipment" contract, the seller commits himself by the act of making the shipment, and if shipment is not contemplated, subsection (3), R.C. 1302.42(C), turns on the seller's final commitment, *i.e.*, the delivery of documents or the making of the contract. See Official Comment to UCC Section 2–401. Where the contract for sale of goods provides for delivery of performance by the seller without the moving of goods, R.C. 1302.42(C) applies instead of R.C. 1302.42(B). See, *e.g.*, Anderson, *supra*, at 541, Section 2–401:42.

 Appellant contends that the trial court erred in applying R.C. 1302.-42(C) where the syllabus in *Smith v. Nationwide Mut. Ins. Co.* (1988), 37 Ohio St.3d 150, 524 N.E.2d 507, required the application of R.C. 1302.42(B). In *Smith*, the Ohio Supreme Court held in its syllabus that "[t]he criteria found in R.C. 1302.42(B), and not the Certificate of Title Act, identify the owner of a motor vehicle for purposes of determining insurance coverage in case of an accident." It is axiomatic that the syllabus of an opinion issued by the Ohio Supreme Court states the law of the case, and, as such, all lower courts in this state are bound to adhere to the principles set forth therein. *Smith v. Klem* (1983), 6 Ohio St.3d 16, 18, 6 OBR 13, 15, 450 N.E.2d 1171, 1173; *State v. Decker* (Sept. 5, 1990), Highland App. No. 725, unreported, at 7, 1990 WL 127070. Furthermore, it is generally improper for a lower court to determine that a syllabus of an Ohio Supreme Court opinion is *obiter dictum*. *Smith v. Klem, supra*, at 18, 6 OBR at 15, 450 N.E.2d at 1173; *Mate v. Stow City School Dist. Bd. of Edn.* (1988), 62 Ohio App.3d 265, 269, 575 N.E.2d 477, 479; see, also, *Bachus v. Loral Corp.* (Oct. 2, 1991), Summit App. No. 15041, unreported, 1991 WL 199906, motion to certify the record allowed in (1992), 63 Ohio St.3d 1411, 585 N.E.2d 835, citing this court's decision in *Decker, supra.*

However, S.Ct.R.Rep.Op. 1(B) provides that the "syllabus of a Supreme Court opinion states the controlling point or points of *law decided in and necessarily arising from the facts of the specific case* before the Court for adjudication." (Emphasis added). In *Smith v. Nationwide Mut. Ins. Co., supra*, the Ohio Supreme Court was asked to determine whether the Ohio Certificate of Title Act, R.C. 4505.01 *et seq.*, or the Ohio Uniform Commercial Code, R.C. 1302.01 *et seq.*, determined the issue of whether an alleged seller's insurance policy applies with respect to risk of loss or damage after the sale of an automobile. *Id.*, 37 Ohio St.3d at 151–152, 524 N.E.2d at 507–509. The court held that the Ohio enactment of the UCC controlled and applied R.C. 1302.42(B) to a factual context where the buyer did not have possession of the

motor vehicle prior to the transaction, *i.e.,* delivery of the car incident to the sale was contemplated by the parties.

■ Although we recognize that we must refrain from modifying the syllabus language of *Smith v. Nationwide Mut. Ins. Co.* on the basis that it is *obiter dictum,* see *Smith v. Klem, supra,* appellant's interpretation of that language is unwarranted, particularly since the Ohio Supreme Court could not have intended its holding to mean that R.C. 1302.42(B) is the *only* Ohio Uniform Commercial Code provision to be applied in identifying the owner of a motor vehicle for purposes of determining insurance coverage in the case of an accident where a sale of the motor vehicle has occurred. Instead, the more reasonable interpretation of the court's syllabus language is that the *applicable* Ohio Uniform Commercial Code provision controls over the provisions of the Certificate of Title Act.

■ In interpreting a statute, a court must give effect to the words utilized, cannot ignore the words of the statute, and cannot supply words not included. *East Ohio Gas Co. v. Limbach* (1991), 61 Ohio St.3d 363, 365, 575 N.E.2d 132, 133. In other words, if the statute conveys a meaning which is clear, unequivocal, and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461. Both R.C. 1302.42(B) and (C) are specific provisions of Ohio's enactment of the Uniform Commercial Code. R.C. 1302.42(B) contemplates physical delivery of the subject goods whereas R.C. 1302.42(C) contemplates "delivery" where the goods are not to be moved. See Official Comment to UCC Section 2–401; Anderson, *supra;* cf., also, *Alford v. Neal* (1988), 229 Neb. 67, 425 N.W.2d 325; *Superior Partners v. Professional Edn. Network, Inc.* (1985), 138 Ill.App.3d 226, 93 Ill.Dec. 8, 485 N.E.2d 1218. In that the evidence in the case at bar indicated that Palmer had possession of the 1971 Chevrolet Impala at the time of the contract for sale, the trial court did not err in determining that R.C. 1302.42(C) applied and that the syllabus of *Smith v. Nationwide Mut. Ins. Co.* did not require a contrary holding. If we were to adopt appellant's interpretation, R.C. 1302.42(C) would never apply and we would be judicially amending R.C. 1302.42 to delete that subsection; the Ohio Supreme Court could not have intended such an incongruous result when it rendered its decision in *Smith v. Nationwide Mut. Ins. Co.*

Appellant further contends that the trial court's application of R.C. 1302.-42(C) conflicts with the decisions in *Cigna Ins. Co. v. Home Indemn. Co.* (May 30, 1990), Cuyahoga App. Nos. 56890, 56898, 56916, 56917 and 56958, unreported, 1990 WL 56783, and *Hardesty v. Nationwide Mut. Ins. Co.* (Mar. 20,

1989), Ross App. No. 1501, unreported, 1989 WL 25727. In *Cigna, supra,* the appellate court referred to R.C. 1302.42(B) where the purchaser of an automobile already had possession; however, both parties indicated that they intended the transfer to be effective prior to the date of the accident. Accordingly, the *Cigna* court held that the parties had "otherwise explicitly agreed." The same result would have occurred if R.C. 1302.42(C) had been applied. Additionally, in *Hardesty, supra,* it appears that although Hardesty was the "title owner" of a motorcycle, Jerry Knece made the payments on the vehicle; the facts in *Hardesty* do not indicate any transfer from Hardesty to Knece, but, instead, that Knece always owned the motorcycle since he made payments. Therefore, neither of these two cases mandates a result contrary to that reached by the trial court in the case at bar. Moreover, to the extent that these decisions either failed to address and/or recognize the distinction between subsections (B) and (C) of R.C. 1302.42, we are persuaded that the trial court's conclusion was more legally appropriate. Consequently, the trial court did not err in applying R.C. 1302.42(C). Appellant's first assignment of error is overruled.

Appellant's second assignment of error asserts that the trial court misapplied R.C. 1302.42(C), even if that provision controls. Appellant contends that although R.C. 1302.42(C)(1) would normally indicate that Smith owned the 1971 Chevrolet Impala until the certificate of title was delivered to Palmer, its exception stating "[u]nless otherwise explicitly agreed" applied to the case at bar where both Smith and Palmer testified that the sale was intended to be complete prior to the date of the accident. Pursuant to R.C. 1302.42(C)(1), where the goods are not to be moved and the seller is required to deliver a document of title, title passes at the time that document is delivered "[u]nless otherwise explicitly agreed." In the case at bar, Smith did not deliver the certificate of title to Palmer until after the motor vehicle accident.

A person claiming that title to the goods has not passed in the manner specified in the Uniform Commercial Code has the burden of proving the existence of an agreement so providing. Anderson, *supra,* at 534–535, Section 2–401:31. An explicit agreement to the contrary is ordinarily a matter of the intention of the parties. *Id.* at 523–524, Section 2–401:12. The question as to whether and when the parties intended that title should transfer to the buyer is essentially one of fact, but if the whole contract of the parties is reduced to writing or if the facts are so clear as to justify but one conclusion, the question is decided as a matter of law. *Id.* at 535, Section 2–401:32. As noted previously, a declaratory judgment action often includes the resolution

of questions of fact. R.C. 2721.10; see, also, *Huntington Trust Co. v. Kear* (Apr. 23, 1991), Ross App. No. 1643, unreported, 1991 WL 62185.

Appellant is essentially contending under his second assignment of error that the judgment of the trial court determining that Smith still owned the 1971 Chevrolet Impala as of the date of the accident was against the manifest weight of the evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. See, *e.g., Brentson v. Chappell* (1990), 66 Ohio App.3d 83, 90, 583 N.E.2d 434, 438, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579. Since there was no written contract between Smith and Palmer, the presence of an explicit oral agreement in contravention of the applicable Ohio Uniform Commercial Code provision was a factual question dependent upon the parties' intention. Anderson, *supra.* Appellant relies on some of the testimony of Smith and Palmer in support of his argument that the parties intended that the sale of the motor vehicle be complete prior to the accident. However, appellant ignores Smith's testimony that his understanding of the transaction was that it was not complete until he received the $1,000 loan money from Palmer, and that he believed that he did not receive this money until after the accident. Accordingly, the trial court's conclusion that, pursuant to R.C. 1302.42(C), Smith still owned the car on the date of the accident and appellant's insurance policy was in force on that date, was supported by some competent, credible evidence. For the foregoing reasons, appellant's second assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE and GREY, JJ., concur.