This is an appeal from an order of the Highland County Court of Common Pleas which granted summary judgment in favor of appellee Commercial Union Insurance Company. The appellants raise a single assignment of error:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE COMMERCIAL UNION INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT."
Finding the appellants' assignment without merit, we affirm the judgment of the trial court.
 I.
On December 20, 1995, Dwayne Willey signed a contract to purchase a Ford van from Mike Castrucci Ford in Milford. The purchase contract, entitled "Used Car Buyer's Order," named Mr. Willey as the "Purchaser" and stated that Mr. Willey "HEREBY AGREE[S] TO PURCHASE FROM MIKE CASTRUCCI FORD, INC. UNDER THE TERMS AND CONDITIONS SPECIFIED ON THE FRONT AND BACK OF THIS ORDER ONE MOTOR VEHICLE AS HEREIN DESCRIBED." In addition to the Used Car Buyer's Order, Mr. Willey signed several other documents listing him as either a "Purchaser" or "Transferee" of the Ford van. Among these were a "Temporary Tag Registration Application," an "Odometer Disclosure Statement," and a "Customer Delivery Receipt."
Mr. Willey took possession of the Ford van on the same day he signed the contract, but did not pay the purchase price to Mike Castrucci Ford. The Used Car Buyer's Order stated that Mr. Willey placed no down payment and listed $4,710.05, the entire purchase price of the van, as the "Balance to Finance." Mr. Willey also executed a notarized "Promissory Note," dated December 20, 1995, in which he promised to pay $4,710.05 to Mike Castrucci Ford by December 23, 1995. Mr. Willey did not pay the purchase price to Mike Castrucci Ford by that date and had not received financing for the Ford van as of January 2, 1996. However, Mr. Willey remained in possession of the vehicle.
On January 2, 1996, Mr. Willey was involved in a collision while driving the Ford van. Appellants Victoria Gregory-Hill and her three minor children were passengers in the van at the time of the accident and suffered injuries. The appellants filed suit against several defendants, including Mr. Willey and the appellee. The appellants sought uninsured/underinsured motorist benefits from an insurance policy issued by the appellee to Mike Castrucci Ford. The appellee moved for summary judgment, arguing that it did not provide coverage because, as a matter of law, Mike Castrucci Ford did not own the vehicle at the time of the accident. The trial court granted the motion and dismissed the appellee, with prejudice, from the appellants' lawsuit. The appellants commenced this appeal.
 I.
Civ.R. 56(C) allows a trial court to grant summary judgment to a party if:
 "* * * [the evidence] timely filed in the action, show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
In conducting our review of a summary judgment, we must apply the same standard used by the trial court. Sommer v. French
(1996), 115 Ohio App.3d 101, 103; Doe v. Adkins (1996),110 Ohio App.3d 427, 432. An appellate court must independently review the record and afford no deference to the trial court's decision. Hall v. Ft. Frye Loc. School Dist. Bd. of Edn.
(1996), 111 Ohio App.3d 690, 694; Evans v. S. Ohio Med. Ctr.
(1995), 103 Ohio App.3d 250, 253. Thus, we will uphold a grant of summary judgment when: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, when viewed most strongly in favor of the non-moving party, that reasonable minds can come to a conclusion only in favor of the moving party. Bostic v. Connor (1988), 37 Ohio St.3d 144,146; Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66. The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115. To survive summary judgment, the nonmoving party must present evidence on a "material" issue, i.e. an issue that might affect the outcome of the suit. Miller v. Loral DefenseSystems, Akron (1996), 109 Ohio App.3d 379, 383; see, also,Sedlak v. Solon (1995), 104 Ohio App.3d 170, 176.
The appellants contend that there remains a triable issue concerning who "owned" the Ford van at the time of the accident. The appellants insist that Mike Castrucci Ford owned the van, which would open the possibility that the appellee's insurance policy with Mike Castrucci Ford covered the accident. In support of this contention, the appellants raise two principal arguments, which we address in turn.
 A.
One of the appellants' arguments concerning ownership of the Ford van focuses on the certificate of title to the vehicle. At the time of the accident, Mr. Willey did not yet have the certificate of title to the vehicle. The appellants maintain that the Ohio Certificate of Title Act, contained in Chapter 4505 of the Revised Code, requires a certificate of title for acquisition of any right, title, claim, or interest in a motor vehicle. See R.C. 4505.04.[1] The appellants are partly correct. However, for the purposes of insurance coverage, the appellants' argument is defeated by settled law.
 In Smith v. Nationwide Mutual Ins. Co. (1988), 37 Ohio St.3d 150, the Supreme Court held that:
 "The criteria found in R.C. 1302.42(B), and not the Certificate of Title Act, identify the owner of a motor vehicle for purposes of determining insurance coverage in case of an accident."
Id. at syllabus (emphasis added). R.C. 1302.42(B), which is part of the Uniform Commercial Code as enacted by the Ohio General Assembly, states that:
 "Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * * ."
The purpose of the Certificate of Title Act is to prevent the importation of stolen cars, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to and ownership of cars.Smith, 37 Ohio St.3d at 152-53; see, also, Hughes v. Al Green,Inc. (1981), 65 Ohio St.2d 110, 115. Accordingly, Smith held that R.C. 4505.04 "is irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership." Smith, 37 Ohio St. 3
d at 153. Otherwise, the Uniform Commercial Code determines motor vehicle ownership rights issues, including those pertaining to insurance coverage. Id.; accord Grange Mut. Cas.Co. v. Smith (1992), 80 Ohio App.3d 426, 431-32; Hardesty v.Nationwide Mut. Ins. Co. (Mar. 20, 1989), Ross App. No. 1501, unreported.
It is axiomatic that the syllabus of an Ohio Supreme Court opinion states the law of the case and, as such, all lower courts in Ohio are bound to adhere to the principles set forth therein. Smith v. Klem (1983), 6 Ohio St.3d 16, 18; Grange Mut.Cas. Co. v. Smith, supra, 80 Ohio App.3d at 431. Rather than accept the syllabus law of the Supreme Court, the appellants insist that Smith v. Nationwide Mut. Ins. Co. need not be followed and that R.C. 4505.04 is still the statute employed to answer ownership questions. Notwithstanding the appellants' extensive citation of Certificate of Title Act cases from the 1950's and 1960's, the appellants' argument fails in light of the syllabus law set forth in Smith v. Nationwide Mut. Ins. Co. Further, the modern cases cited by the appellants provide no support for ignoring syllabus law. Of these more recent cases, the appellants place principal reliance on Morris v. Erieway,Inc. (1994), 93 Ohio App.3d 239. However, Morris involved levies upon certain personal property and the ownership issues arising out of those levies. Id. at 241. The Morris court correctly applied R.C. 4505.04 to the situation presented in that case, and cited Smith v. Nationwide Mut. Ins. Co. for the proposition that "R.C. 4505.04 is limited to actions including 'importation of vehicles, rights as between lienholders, right of bona fide purchasers, and instruments evidencing title and ownership.' " Id. at 245 (emphasis added). Similarly, inNational City Bank v. Elliot (C.A.6, 1997), 214 B.R. 148, a bankruptcy case, the Certificate of Title Act applied because the case involved ownership questions unrelated to insurance coverage. Finally, we construe the appellants' citation toClark v. Stevens (June 23, 1995), Huron App. No. H-94-046, unreported, as a misreading of the Sixth District's opinion, rather than an attempt to mislead this court. Nowhere in Clark
does the court state, as the appellants represent in their brief, that "a certificate of title must be passed to effect the sale of a motor vehicle." The Clark court did not rely upon the Certificate of Title Act in its decision. In fact, Clark
held that the trial court erred in relying upon the certificate of title provisions contained in R.C. 4505.03. The appellants' arguments concerning the Certificate of Title Act are unpersuasive.
 B.
Having rejected the appellants' argument that the Certificate of Title Act controls the ownership issue presented in this case, we must now turn to R.C. 1302.42(B) to decide whether the trial court correctly granted summary judgment for the appellee. There is no dispute in the present case that Mike Castrucci Ford tendered "delivery" of the Ford van to Mr. Willey on December 20, 1995 after Mr. Willey signed the purchase contract. Having surrendered possession of the van, R.C. 1302.42(B) operated to transfer title from Mike Castrucci Ford to Mr. Willey "unless otherwise explicitly agreed" by the parties to the purchase contract. Absent an explicit agreement to the contrary, Mr. Willey owned the van for purposes of determining insurance coverage when he took possession, and Mike Castrucci Ford retained only a security interest at best. See R.C. 1302.42(B); see, also, R.C. 1302.42(A) (any retention of title by the seller in goods delivered to buyer is limited in effect to a security interest).
A person claiming that title to goods has not passed in the manner specified in the Uniform Commercial Code has the burden of proving the existence of an agreement to that effect.Grange Mut. Cas. Co. v. Smith, supra, 80 Ohio App.3d at 433. An "explicit agreement to the contrary" as contemplated by R.C.1302.42(B) is ordinarily a matter of the parties' intent. Id.
The parties' intent to transfer title to the buyer is essentially one of fact. Id. However, if the whole contract is reduced to writing or if the facts are so clear as to justify but one conclusion, the question is decided as a matter of law.Id. Thus, we must analyze the purchase contract signed by Mr. Willey to determine the applicability of R.C. 1302.42(B) and whether summary judgment was appropriate.
The Used Car Buyer's Order that Mr. Willey signed consisted of terms and conditions listed on the front and back of the documents. Paragraph 12 on the back of the order states that:
 "It is expressly agreed that the purchaser acquires no right, title or interest in or to the property which he agrees to purchase hereunder until such property is delivered to him and either the full purchase price if [sic] paid in cash or a satisfactory deferred payment agreement is executed by the parties hereto, the terms of which shall thereafter be controlling."
It is undisputed that Mr. Willey did not pay cash for the van. On the front of the Used Car Buyer's Order, the sum of $4,710.05 was listed on a line titled "Balance to Finance." The appellants contend that a triable issue of fact exists regarding ownership because the terms of the Buyer's Order make transfer of ownership contingent upon Mr. Willey obtaining financing for the vehicle.[2] We disagree with the appellants because the express contingency the contract attached to ownership was satisfied by the parties.
Despite all the documents Mr. Willey signed as a purported "buyer" of the van, the terms and conditions of the Used Car Buyer's Order provide for an explicit agreement that ownership did not pass to Mr. Willey upon his mere possession of the vehicle. The language contained in paragraph 12 expresses that the parties had "otherwise explicitly agreed" to different terms of ownership than those contained in R.C. 1302.42(B). SeeValley Forge Ins. Co. v. Great Am. Ins. Co. (Sept. 13, 1995), Hamilton App. Nos. C-940625, C-940673, unreported (finding an almost identical purchase contract provision to indicate that parties "otherwise expressly agreed" that ownership did not transfer). The paragraph expressly says that Mr. Willey acquires "no right, title or interest" until Mike Castrucci Ford delivers the vehicle to him and pays the full purchase price or the parties execute a satisfactory deferred payment agreement. Since it is undisputed that Mr. Willey does not pay the full purchase price, ownership passed to him, for purposes of insurance coverage, only if the parties executed a deferred payment agreement.
On the same day that Mr. Willey signed the Used Car Buyer's Order, he signed a promissory note for the full purchase price of the van. The terms of the promissory note obligated Mr. Willey to pay the entire purchase price within three days. Ostensibly, this was done to allow Mr. Willey to obtain conventional financing for the van. Nonetheless, the appellants point to no facts or law that would render the promissory note void or unenforceable. The promissory note is by definition a deferred payment agreement, as it is an unconditional promise to pay a fixed sum of money on a certain date. See Black's Law Dictionary (6 Ed. 1990) 1214; Burke v. State (1922), 104 Ohio St. 220, paragraph one of syllabus. This document satisfies the express terms of Paragraph 12 and therefore controls the parties' rights and liabilities regarding payment. The fact that Mr. Willey subsequently defaulted upon the promissory note does not act retroactively to void the sale. Nor does the default, in and of itself, generate any ownership interest in the van in favor of Mike Castrucci Ford. In other words, Mike Castrucci Ford could not have lawfully repossessed the van upon Mr. Willey's default unless it had obtained a properly perfected security interest in it. Moreover, Mr. Willey's failure to obtain financing does not create a triable issue of fact regarding ownership. The purchase contract conditions transfer of ownership on the parties' execution of a deferred payment agreement, not the buyer's obtaining financing. Financing is but one species of a "deferred payment agreement." The promissory note signed by the parties is another. In sum, upon execution of the promissory note and delivery of the van, Mike Castrucci Ford had no ownership interest in the van.
Accordingly the trial court properly determined as a matter of law that Mike Castrucci Ford did not own the vehicle at the time of the accident. Appellants' assignment of error has no merit.
JUDGMENT AFFIRMED
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. and Abele, J.
Concur in Judgment Opinion:
For the Court
 BY: ___________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] R.C. 4505.04 states in part:
 "(A) No person acquiring a motor vehicle from its owner * * * shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle * * *."
[2] The appellants also raise the argument that no sale occurred, notwithstanding Mike Castrucci Ford's "delivery" of the van to Mr. Willey, because this was a "sale on approval" pursuant to R.C. 1302.39 wherein Mr. Willey could return the van to the buyer. Because this was a "sale on approval," the appellants argue that Mr. Willey had not "accepted" the van and that the risk of loss remained with Mike Castrucci Ford. See R.C.1302.40(A)(1). In this respect, the appellants are wrong. The official comment to UCC 2-326, contained in the Commentary accompanying R.C. 1302.39, makes clear that a "sale on approval" (a.k.a., a sale "on trial" or "on satisfaction") means a transaction in which a buyer has the right to return goods if not satisfied with them, even though the goods conform to the purchase contract. The purchase contract in this case does not contain language to this effect. Moreover, we find "risk of loss" analysis inapplicable here. "Risk of loss" concepts are relevant to determine, in the case where goods are destroyed, whether a buyer is liable for the price or whether the seller is liable in damages to the buyer for nondelivery. See Hughes, supra, 65 Ohio St.2d at 113. This case presents no such question.