**UNITED STATES of America**

**v.**

**John S. COUMANTAROS as owner of**
**THE STAVROS COUMANTAROS.**

**Civ. A. No. 10541.**

United States District Court
D. Maryland.

July 28, 1958.

Leon H. A. Pierson, U. S. Atty., and William J. Evans, Asst. U. S. Atty., Baltimore, Md., for the United States.

David R. Owen, Baltimore, Md., Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

R. DORSEY WATKINS, District Judge.

On April 14, 1958, in the Superior Court of Baltimore City, the United States as plaintiff instituted nonresident attachment proceedings against the defendant, John S. Coumantaros, a citizen

and resident of Greece. The short note filed with the attachment claims that the defendant is indebted to the plaintiff in the sum of $3,342.35, plus interest, on a contract entered into by the parties for the purchase by the defendant from the plaintiff of the S. S. Stavros Couromtaros, Ex John M. Brooke, the plaintiff acting by and through the United States Maritime Commission as its agent. Pursuant to said attachment the sheriff of Baltimore City seized the vessel in question which was then, and now is, undergoing repairs at the Maryland Shipbuilding & Drydock Company. Thereafter the defendant removed the proceedings to this court and filed a motion to quash the attachment on the ground that the United States is not a "person" or "corporation" entitled to proceed against the defendant under nonresident attachment provisions of the Maryland Code of Public General Laws.

Article 9, section 1 of the Code of Public General Laws of Maryland, 1957 Edition, the statute under which the instant proceedings were commenced, provides:

"§ 1 Right to become a plaintiff. *Every person and every body corporate* that has the right to become a plaintiff in any action or proceeding before any judicial tribunal in this State shall have the right to become a plaintiff in an attachment against a nonresident of this State, or against a person absconding." (Emphasis supplied.)

Article 1, Rules of Interpretation, Section 15, of the Code states: "Person to include corporation. The word person shall include corporation, unless such a construction would be unreasonable." And see Rule 5, subd. q of the Maryland Rules of Procedure set out under "General Provisions * * * Definitions" of such rules and entitled "Person":

" 'Person' means any natural person, partnership, joint stock company, unincorporated association, or society, *or municipal or other corporation of any character whatsoever.*" (Emphasis supplied.)

The question for determination thus becomes whether or not within the meaning of section 1 of Article 9 of the Maryland Code, the United States is under the facts of the instant case a "person", a "body corporate", or an entity entirely different from either.

That the United States could seek a common law remedy in a state court for so-called private wrongs was early recognized, and the distinction made, between the United States when acting in its sovereign capacity and when asserting contractual or property rights (or when invoking criminal sanctions—not here relevant):

"Every sovereign State is of necessity a body politic, or artificial person, and as such capable of making contracts and holding property, both real and personal. It is true, that, in consequence of the peculiar distribution of the powers of government between the States and the United States, offences [sic] against the latter, as a sovereign, are those only which are defined by statute, while what are called common law offences [sic] are the subjects of punishment only by the States and Territories within whose jurisdiction they are committed. But the powers of the United States as a sovereign, dealing with offenders against their laws, must not be confounded with their rights as a body politic. It would present a strange anomaly, indeed, if, having the power to make contracts and hold property as other persons, natural or artificial, they were not entitled to the same remedies for their protection. The restraints of the Constitution upon their sovereign powers cannot affect their civil rights. Although as a sovereign the United States may not be sued, yet as a *corporation or body politic* they may bring suits to enforce their contracts and protect their property, in the State courts, or in their own

tribunals administering the same laws. As an owner of property in almost every State of the Union, they have the same right to have it protected by the local laws that other persons have. As was said by this court in Dugan v. United States, 3 Wheat. [172] 181 [4 L.Ed. 362], 'It would be strange to deny them a right which is secured to every citizen of the United States.'" (Emphasis supplied.) Cotton v. United States, 1850, 11 How. 229, 231–232, 52 U.S. 229, 231–232, 13 L.Ed. 675.

■■ In the instant case, of course, a statutory right, not a common law right, is being asserted and the statutory remedy sought, being in derogation of the common law, requires the application of the well-established doctrine that the provisions of the statute must be strictly construed in favor of the person against whom the attachment is invoked. Coupled, however, with this rule of construction should be the equally well-established one that "while the word 'person' does not ordinarily include the state, it may. Words and Phrases, First and Second Series; Saranac Land & Timber Co. v. Roberts, 195 N.Y. 303, 88 N.E. 753; State of South Carolina v. U. S., 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, where such an intention is manifest." Huffman v. State Roads Commission, 1927, 152 Md. 566, 584, 137 A. 358, 365; See, also, State v. Ambrose, 1948, 191 Md. 353, 365, 62 A.2d 359; Accord as to "person" and "corporation": 82 C.J.S. Statutes § 317, p. 557.

" * * * Whether the word 'person' or 'corporation' includes a State or the United States depends upon its legislative environment. State of Ohio v. Helvering, 292 U.S. 360, 370, 54 S.Ct. 725, 78 L.Ed. 1307. The Cooper case [United States v. Cooper Corp., 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071] recognized that 'there is no hard and fast rule of exclusion. The purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to con-

struction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law.' 312 U.S. at pages 604, 605, 61 S.Ct. at page 743, 85 L.Ed. 1071." State of Georgia v. Evans, 1942, 316 U.S. 159, 161, 62 S.Ct. 972, 973, 86 L.Ed. 1346.

" * * * It many times has been held that the United States or a state is a 'person' within the meaning of statutory provisions applying only to persons. See State of Ohio v. Helvering, 292 U.S. 360, 370, 54 S.Ct. 725, 78 L.Ed. 1307, and cases cited. In Martin v. State, 24 Tex. 61, 68, this was held in respect of a criminal statute, *notwithstanding the general rule that such statutes are to be construed strictly.* The statute * * * there penalized the false making or fraudulent alteration of a public record when done 'with intent that any person be defrauded.' The state Supreme Court held that the state was to be taken as a 'person' within the meaning of the statute, and one who made the entry with intent to defraud the state violated the statute. The Texas decision was expressly followed by this court in Stanley v. Schwalby, 147 U.S. 508, 517, 13 S.Ct. 418, 422, 37 L.Ed. 259, where it was held that the word 'person' used in the statute there under consideration would include the United States 'as a body politic and corporate.' Blackstone, writing on the rights of persons (1 Bl. 123) says:

" 'Persons also are divided by the law into either natural persons, or artificial. Natural persons are such as the God of nature formed us; artificial are such as are created and devised by human laws for the purposes of society and government, which are called corporations or bodies politic.'" (Emphasis supplied.) Helvering v. Stockholms Enskilda Bank, 1934, 293 U.S. 84, 91–92, 55 S.Ct. 50, 53, 79 L.Ed. 211; see, also, Far East Conference v. United

States, 1952, 342 U.S. 570, 576, 72 S.Ct. 492, 96 L.Ed. 576.

That the United States is a "body corporate" has been held in Respublica v. Sweers, 1779, 1 Dall. 41, 44, 1 U.S. 41, 44, 1 L.Ed. 29; Cotton v. United States, supra, 11 How. 229, 231, 52 U.S. 229, 231, 13 L.Ed. 675; Helvering v. British-American Tobacco Company, Limited, 2 Cir., 1934, 69 F.2d 528, 530, affirmed 1934, 293 U.S. 95, 55 S.Ct. 55, 79 L.Ed. 218. Whether or not the sovereign entity involved is the United States, a state, an agency of the sovereign, a city, or town, the same rules of construction and the same determinative tests apply. Thus a state in appropriate circumstances may be included within the purview of a statutory provision using the word person "either as a 'person' under the statutory extension of that word to include a corporation, or as a 'person' without regard to such extension." State of Ohio v. Helvering, 1934, 292 U.S. 360, 371, 54 S.Ct. 725, 727, 78 L.Ed. 1307. Likewise, the Maryland Court of Appeals has held, relying in part on the predecessor section of section 15, Article 1 of the Maryland Code, quoted supra, that the Mayor and City Council of Baltimore, a municipal corporation, is included in the term "persons."

> "It is said in Lewis on Eminent Domain (3rd Ed.), § 790, that, 'as the right of appeal is conferred by statute, every appeal must find its warrant in the statute. In statutes granting appeals the word "persons" will include corporations,' and by the Code of Public General Laws of this state (1912), article 1, § 14, it is specially provided that the word 'persons' shall include corporations unless such a construction of the statute would be unreasonable. To construe the word 'persons' in the statute before us as including a municipal corporation, is not at all un-

reasonable and it should therefore be so construed." Patterson v. Mayor and City Council of Baltimore, 1915, 127 Md. 233, 237, 96 A. 458, 459.

By analyzing those decisions holding that the sovereign is a person or body corporate, it may be found that one or more of the following factors are present and it may be concluded that their presence determines the reasonableness of such a construction of the statute in question and the manifestation of legislative intent to include the sovereign. Generally the sovereign entity involved is acting not in its sovereign capacity but rather is engaging in commercial and business transactions such as other persons, natural or artificial, are accustomed to conduct. Usually, in addition, when a statute is construed so as to include the sovereign within its terms no impairment of sovereign powers results thereby and rights and remedies are given rather than taken away. In holding that, when engaged in a business of a private nature, the State of Ohio was a person, the Supreme Court said:

> " * * * If a state chooses to go into the business of buying and selling commodities, its right to do so may be conceded so far as the Federal Constitution is concerned; but the exercise of the right is not the performance of a governmental function, and must find its support in some authority apart from the police power. When a state enters the market place seeking customers it divests itself of its quasi sovereignty pro tanto, and takes on the character of a trader, so far, at least, as the taxing power of the federal government is concerned." State of Ohio v. Helvering, supra, 292 U.S. 360, 369, 54 S.Ct. 725, 726, 78 L.Ed. 1307.

Section 1117 of Title 46 U.S.C. 1946 Edition,[1] granted the general, overall authority pursuant to which the contract

1. The contract for the sale of the S.S. Stavros Coumantaros was executed January 17, 1947, the United States Maritime Commission acting on behalf of the United States. Thereafter by 1950 Reor-

ganization Plan No. 21, 64 Stat. 1273, this function was transferred to the Federal Maritime Board and the Secretary of Commerce.

herein involved was entered into, such section providing inter alia:

"§ 1117. Power to contract; audit of accounts; reports of departure of Commission from provisions of chapter.

"The Commission may enter into such contracts, upon behalf of the United States, and may make such disbursements as may, in its discretion, be necessary to carry on the activities authorized by this chapter, or to protect, preserve, or improve the collateral held by the Commission to secure indebtedness, *in the same manner that a private corporation may contract* within the scope of the authority conferred by its charter. \* \* \*" (Emphasis supplied.)

The United States Court of Appeals for the District of Columbia Circuit in Dollar v. Land, 1946, 81 U.S.App.D.C. 28, 154 F.2d 307, 311–312, affirmed 1947 on the ground that the action did not constitute a suit against the United States, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209, interpreted the force and effect of of section 1117 as follows:

"We are in agreement with the view taken of this section of the law by the court deciding Standard Oil Co. of California v. United States, D.C., 59 F.Supp. 100, involving the Maritime Commission. There the provision was treated in the same fashion as those statutes creating corporate instrumentalities for the conduct of public business. While the corporate acts characteristically carry language to the effect that the corporation may 'sue and be sued,' we think the comparison is well drawn. It is in harmony with the views of administrative officials having occasion to consider that section of the law involved in this litigation. For example, though not deciding the extent of contractual freedom conferred upon the Maritime Commission by Section 207 the Attorney General has stated 'that section 207 was intended to confer "all the gen-

eral and implied powers of a business corporation" (H.Rept. No. 2168, 75th Cong., 3d Sess.) and that it has been construed to authorize departures from the usual rules governing the making of Government contracts when the unusual or business character of the activities involved so require (Comptroller General's Decisions, A–51647, March 27, 1941, and B–15611, January 12, 1942).'

"Thus the Maritime Commission seems to stand in much the same relationship to those with whom it contracts under section 207 as do the more formal corporate organizations charged with transacting the government's business. \* \* \*

"Courts have long recognized the difference between the more customary governmental activities and those carried on by the government through the commercial device of a corporate organization.[11] \* \* \*

"Footnote 11. In Bank of the United States v. Planters' Bank of Georgia, 9 Wheat. 904, 907, 6 L.Ed. 244, it was said: 'It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted.'"

A proper corollary to these statements in the Dollar case and to the court's conclusion that the statutory power to contract in the same manner as a private corporation constitutes a waiver of governmental immunity, thus imposing upon the Commission "commensurate burdens of liability as in the case of an agency with formal corporate status", would appear to be that, likewise, commensurate rights and remedies should be available.

If the government or any agency thereof is to be considered a corporation for the purpose of being sued, a fortiori it should be so treated for the purpose of establishing its capacity to bring suit. The general rule of construction excluding the government (federal, state, or their agencies) from the purview of a statute expressly applicable to a person or corporation finds its basis in no small part in the doctrine of governmental immunity (State of Ohio v. Helvering, supra, 292 U.S. 360, 368–369, 54 S.Ct. 725, 78 L.Ed. 1307). Thus the general exclusionary rule has no application where no impairment of sovereign powers will result, where immunity has been waived, or where the government is given, rather than deprived of, powers. 82 C.J.S. Statutes § 317, p. 556. The government should have recourse to the remedies afforded by general laws.

> " * * * Although as a sovereign the United States may not be sued, yet as a corporation or body politic they may bring suits to enforce their contracts and protect their property, in the State courts, or in their own tribunals administering the same laws. As an owner of property in almost every State of the Union, *they have the same right to have it protected by the local laws that other persons have.* As was said by this court in Dugan v. United States, 3 Wheat. [172] 181, 4 L.Ed. 362, 'It would be strange to deny them a right which is secured to every citizen of the United States.' " Cotton v. United States, supra, 11 How. 229, 231–232, 52 U.S. 229, 231–232. (Emphasis supplied.)

Accordingly, this court holds that the United States is a proper party plaintiff within the meaning of the provisions of the Maryland nonresident attachment statute, Article 9, section 1 of the Maryland Code. Were the court to reach a contrary conclusion, it should be noted that not only the United States but the State of Maryland as well would be precluded from proceeding in its own state courts against a defendant by way of nonresident attachment; while on the other hand municipal corporations such as the Mayor and City Council of Baltimore would come within the explicit terms of the statute—an illogical, unreasonable, result and construction, which scarcely commends itself as having been intended or foreseen by the legislature in the absence of an express indication of such an intent.

■ This leaves for consideration one point not raised by either side. The portion of the opinion in the Dollar case, previously quoted, while indicating that the Federal Maritime Board, successor to the functions previously performed by the United States Maritime Commission, would have been a proper party plaintiff in the instant suit, does not expressly reach the issue of whether or not the United States may bring such an action in its own name [2] rather than in the name of the agent through which it is acting, although such an implication might be drawn from the court's citation with approval of the Standard Oil case in which the converse proposition was held to be true; that is, that the execution of a charter party by the War Shipping Administration not only bound the United States but also subjected the United States to suit in its own name in the same manner as a private party. In so concluding, the court relied heavily upon the Congressional authorization to enter into contracts heretofore quoted in pertinent part, namely section 207 of the Merchant Marine Act of 1936, as amended, 46 U.S. C.A. § 1117, which power to contract was extended, for the successful prosecution of the Second World War, to the War Shipping Administration by Executive Orders No. 9054, 7 Fed.Reg. 837, 3 C.F.

2. For a review of the extensive litigation arising out of the transactions involved in the Dollar case including a subsequent suit brought by the United States in its own name asserting a claim substantially the same as that previously urged by the individual members of the Maritime Commission, see: Land v. Dollar, 1951, 341 U.S. 737, 740–747, 71 S.Ct. 987, 95 L.Ed. 1331.

R., 1943 Cum.Supp., pp. 1086–1088, and No. 9244, 7 Fed.Reg. 7327, 3 C.F.R., 1943 Cum.Supp., pp. 1209–1210, U.S.Code Congressional Service 1942, pp. 154, 1254.

This court considers the decision of the United States Court of Appeals for the Fourth Circuit in Insurance Company of North America v. United States, 1947, 159 F.2d 699, dispositive of the issue raised. In that case the court said at page 702:

> " * * * It seems well settled that, when the United States acts through the agency of a wholly owned corporation, *it may sue in its own name* for the protection of its interests, *without the joinder of the corporation.* United States v. Czarnikow-Rionda Co., 2 Cir., 40 F.2d 214; Russell Wheel & Foundry Co. v. United States, 6 Cir., 31 F.2d 826; United States v. Skinner & Eddy Corporation, D.C., 5 F.2d 708; cf. Erickson v. United States, 264 U.S. 246, 44 S.Ct. 310, 68 L.Ed. 661; Clallam County v. United States, 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328." (Emphasis supplied.)

It is interesting to note that the two Circuit Court cases and the one District Court case relied upon by the Fourth Circuit all involved suits by the United States in its own name as plaintiff and real party in interest on contracts made by its agent, the United States Shipping Emergency Fleet Corporation, a body corporate, which under the facts of the instant case may be considered the predecessor of the United States Maritime Commission in the exercise of the power to contract [3] conferred upon that Commission by section 207 of the Merchant Marine Act of 1936, which section was

the source of authority for entering into the contract in the instant proceeding.

Accordingly, on the basis of these authorities and for the reasons stated, this court holds that the United States, having entered into a contract through the then existing agency of the United States Maritime Commission, may now sue in its own name for the protection of those contractual interests, having established its capacity to bring suit under the Maryland nonresident attachment statute.

The motion to quash is denied.

---

3. For a discussion of the nature of the various contractual powers vested in the Fleet Corporation see: Emergency Fleet Corporation, United States Shipping Board v. Western Union Telegraph Company, 1928, 275 U.S. 415, 421–426, 48 S.Ct. 198, 72 L.Ed. 345, and cases cited therein. See, also, sections 1111–1114 of Title 46 U.S.C., 1940 Edition, regarding the creation of the United States Maritime Commission (Commission); the dissolution and transfer of property of the United States Shipping Board Merchant Fleet Corporation to the Commission; and the transfer of functions, powers, and duties of the former United States Shipping Board to the Commission.