**STATE OF OHIO ex rel. Lee FISHER, Attorney General, Plaintiff,**

v.

**LOUIS TRAUTH DAIRY, INC., et al., Defendants.**

**No. C–1–93–0553.**

United States District Court, S.D. Ohio, Western Division.

April 23, 1994.

Doreen Claire Johnson, Ohio Atty. Gen., Columbus, OH, for the State of Ohio.

James Rubin Cummins, Brown, Cummins & Brown, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Doreen Claire Johnson, Ohio Atty. Gen., Columbus, OH, for Lee Fisher.

G. Jack Donson, Jr., Taft, Stettinius & Hollister, Cincinnati, OH, for Louis Trauth Dairy, Inc., David E. Trauth.

Brian Edward Hurley, Crabbe, Brown, Jones, Potts & Schmidt, Cincinnati, OH, for Dan Smith.

Donald L. Stepner, Adams, Brooking, Stepner, Woltermann & Dusing, Covington, KY, for H. Meyer Dairy Co.

William J. Brown, Emens, Kegler, Brown, Hill & Ritter, Columbus, OH, for Borden, Inc., Meadow Gold Dairies, Inc., Valley Bell Dairy.

Donald S. Scherzer, Kohrman, Jackson & Krantz, Cleveland, OH, for Reiter Dairy, Inc., Broughton Foods Co.

Edward Schmertz Dorsey, Lindhorst & Dreidame, Cincinnati, OH, for Coors Bros. Co., Inc.

John J. Eklund, Calfee, Halter & Griswold, Cleveland, OH, for Smith Dairy Products Co., Inc.

Ralph E. Cascarilla, Cavitch, Familo & Durkin, Cleveland, OH, for Goshen Dairy Co.

Stephen J. Squeri, Jones Day Reavis & Pogue, Cleveland, OH, for Hillside Dairy Co.

Richard L. Stoper, Jr., Gold Rotatori & Schwartz Co., L.P.A., Cleveland, OH, for Superior Dairy, Inc.

Robert P. Fitzsimmons, Fitzsimmons & Associates, Wheeling, WV, for United Dairy, Inc.

Gerald Francis Kaminski, U.S. Atty., Cincinnati, OH, for U.S.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

SPIEGEL, District Judge.

This matter is before the Court on Motions To Dismiss or for a More Definite Statement filed individually and jointly by the various Defendants (docs. 31, 32, 33, 35, 36, 41, 43, 63, 85, 93, and 94). The Plaintiff has responded to these motions (docs. 58, 86, and 106). The Defendants, in turn, have replied (docs. 72, 80, 81, and 99). The Plaintiff has requested leave to file a Surreply (108). The Defendants then filed a Joint Response to Plaintiff's request to surreply (doc. 114) and the Defendants themselves have asked for leave to file their own Supplemental Memorandum (doc. 140).

In addition, the Defendants from Northeast Ohio have separately moved to be dropped from this suit or to sever and transfer the claims against them (doc. 115). The Plaintiff has responded (doc. 129), and the Northeast Defendants have replied (doc. 142). The Borden Defendants have also replied (doc. 138) in support to the Northeast Defendants.

Initially, we will grant all requests for leave to file additional briefs beyond those ordinarily permitted under Local Rule 7.2(a)(2). Due to the complexity and interdependence of these motions and out of an abundance of caution, we intend to consider all relevant arguments of the parties.

### BACKGROUND

The Secretary of State has sued fifteen dairies doing business in Ohio, alleging price fixing in the sale of milk to schools. In addition the Amended Complaint names certain officers of the Defendant Dairies personally. Subsequent to the filing of some of the Defendants' Motions to Dismiss, the Plaintiff, as directed by the Court, filed Plaintiff's Outline Description of Overlapping Conspiracies (doc. 75). This document was ordered by the Court in response to the Defendants' requests for a more clear statement of the charges leveled against them. At this time two dairies, Meyer Dairy and Coors Dairy, have settled with the Plaintiff and have been dismissed from this case. The Defendants have cooperated in the filing of these motions and many Defendants incorporate the motions of the others.

### STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) must be viewed in the light most favorable to the party opposing the motion. *Great Lakes Steel v. Daggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). A court must accept as true all allegations in the well pleaded complaint under attack. *Id.* A court may grant the motion only "if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balderaz v. Porter,* 578 F.Supp. 1491, 1494 (S.D.Ohio 1983).

### DISCUSSION

#### Failure to State a Claim

The Defendants' original Motion to Dismiss or For a More Definite Statement challenged the adequacy of Plaintiff's First Amended Complaint. Initially, the Defendants noted that the Complaint failed to name the actual school boards on whose behalf the Secretary is acting. Further, the Defendants protested that the allegations in the Complaint were conclusory and failed to give them adequate notice of the claims made against them. In the alternative the Defendants prayed for a more definite statement of the Plaintiff's claims. The Court found merit in these assertions by the Defendants and ordered in our Preliminary Pretrial Order

that the Plaintiff supplement his Amended Complaint as follows:

By November 15, 1993, the Plaintiff will file with the Court an Outline Description of the Overlapping Conspiracies alleged in the Complaint, including:

(1) which dairies were involved in each conspiracy,

(2) which school districts were the target of each conspiracy,

(3) when each conspiracy began and ended,

(4) what were the geographic boundaries of each conspiracy,

(5) what overt acts by the dairies tend to prove the conspiracy theory.

Preliminary Pretrial Order, October 24, 1993, Document 38. The Plaintiff has submitted the Description (doc. 75) as ordered. Some Defendants contend that even with this information the Plaintiff's Amended Complaint is inadequate. However, we hold that with the filing of the Plaintiff's Description of the Conspiracies, the requirements of notice pleading are satisfied. *See* Fed.R.Civ.P. 8(a).

### Satisfaction

■ Next the Defendants argue that the Settlement Agreement between Meyer Dairy and the State of Ohio constitutes full restitution, thereby leaving no claim for damages against the remaining Defendants. However, it is established law in Ohio that settlement with one Defendant, with a reservation of rights against other Defendants does not act as bar to suit against another Defendant who may also be liable. *See Whitt v. Hutchison*, 43 Ohio St.2d 53, 60, 330 N.E.2d 678 (1975). Therefore, the Defendants' Motion to Dismiss based on the Meyer Dairy settlement must be denied.

### Standing

The Defendants argue that the Plaintiff lacks standing to bring their Valentine Act claims for damages. They base their contention primarily on the language of the Act in conjunction with the *Thaxton* case. *Thaxton v. Medina City Board of Education*, 21 Ohio St.3d 56, 488 N.E.2d 136 (1986).

■ There is nothing in the language of the Act which would prevent a school district from bringing an action. The Act states in pertinent part that:

[T]he person injured in his business or property by another person by reason of anything forbidden or declared to be unlawful in [this Act], may sue therefor in any court having jurisdiction and venue thereof, . . . .

Ohio Rev.Code § 1331.01(A). The Act provides this definition of "person:"

(A) "Person" includes corporations, partnerships, and associations existing under or authorized by any state or territory of the United States, and solely for the purpose of the definition of division (B) of this section, a foreign governmental entity.

Ohio Rev.Code § 1331.01(A). As the Ohio Supreme Court has noted, the definition is not exclusive, and gives no indication that the legislature intended to eliminate school boards. *Thaxton*, 21 Ohio St. at 57, 488 N.E.2d 136.

The Defendants maintain that a school board is not a "person" within the meaning of the Act. They base this contention on the holding in *Thaxton*. In that case a school board was sued for Valentine Act violations. The Ohio Supreme Court held in the syllabus:

A public board of education is not a "person," as defined in R.C. 1331.01(A), when the board operates within its clear legal authority.

*Thaxton v. Medina City Board of Education*, 21 Ohio St.3d 56, 488 N.E.2d 136 (1986). It would, at first glance, appear that *Thaxton* not only protect a school district from suit under the Valentine Act, but also would exclude school districts from becoming a plaintiff under the Act. However, upon closer analysis, we are persuaded that despite the broad language of the syllabus, the intent of the Ohio Supreme Court was only to provide protection from lawsuits against school boards. We do not find that it intended to deprive school districts the right to sue, if the districts should become the victims of price fixing.

We must begin this analysis with a consideration of the significance of the syllabus in Ohio cases. The Ohio Supreme Court is required by statute to make a brief statement of the new and important points of law which each case establishes. Ohio Rev.Code § 2503.42. It is axiomatic that this brief statement, the syllabus, states the law of the case, and that all courts applying Ohio law are bound to adhere to the principles set forth there. *Smith v. Klem,* 6 Ohio St.3d 16, 18, 450 N.E.2d 1171 (1983); *Grange Mut. Cas. Co. v. Smith,* 80 Ohio App.3d 426, 431, 609 N.E.2d 585 (Washington Cty.1992). However, the syllabus cannot be understood in a vacuum, but must be read in the context of the facts of the particular case upon which it is premised. It is not to be regarded as absolutely controlling authority in other cases where the material facts are different. *Fenner v. Parkinson,* 69 Ohio App.3d 210, 214, 590 N.E.2d 339 (Franklin Cty.1990). The Supreme Court of Ohio Rules for the Reporting of Opinions declares that "[t]he syllabus ... states the controlling point or points of law decided in and necessarily arising *from the facts of the specific case* before the Court for adjudication." S.Ct.R.Rep.Op. 1(B) (emphasis added). Therefore, the syllabus in the *Thaxton* case must be understood in terms of the facts of that case. Our analysis then must turn to those facts.

In *Thaxton* three school boards were being sued under the Valentine Act. The plaintiffs claimed that the school boards were enforcing a monopoly on the students in regard to year book photographs. 21 Ohio St.3d at 56, 488 N.E.2d 136. The court held that the school boards could not be sued under the Valentine Act, because the boards were not "persons" within the meaning of the Act. *Id.* at 57, 488 N.E.2d 136. The *Thaxton* court reached this conclusion on two grounds.

The first basis for the *Thaxton* court's holding is that where a public entity is found to be a "person" for purposes of a statute "the entity is usually engaged in a commercial or business activity rather than acting in its governmental capacity." 21 Ohio St.3d at 57, 488 N.E.2d 136. For this proposition the court cites the case of *United States v. Coumantaros,* 165 F.Supp. 695, 698 (D.Md.1958).

In that case the United States was attempting to sue an individual person in the Superior Court of Baltimore City, in order to recover on a debt. The Baltimore ordinance allowed "persons" to sue and the defendant contested whether the United States had standing as a "person." The *Coumantaros* court articulated several factors which when present make it reasonable to construe the sovereign to be a "person" under a statute.

Generally the sovereign entity involved is acting not in its sovereign capacity but rather is engaging in commercial and business transactions such as other persons, natural or artificial, are accustomed to conduct. Usually, in addition, when a statute is construed so as to include the sovereign within its terms *no impairment of sovereign powers results thereby* and *remedies are given rather than taken away.*

\* \* \* \* \* \*

'When a state enters the market place seeking customers it divests itself of its quasi sovereignty, pro tanto, and takes on the character of a trader....' *Ohio v. Helvering,* 292 U.S. 360, 369 [54 S.Ct. 725, 727, 78 L.Ed. 1307] (1934).

*Coumantaros,* 165 F.Supp. at 698 (emphasis added). It is clear from these criteria that the standard the *Coumantaros* court is relying upon is basically the proprietary versus governmental function distinction. *See Hack v. Salem,* 174 Ohio St. 383, 387, 189 N.E.2d 857 (1963). This proprietary versus governmental analysis is primarily concerned with whether a public entity is entitled to the protection of sovereign immunity. *See id.* Likewise, the *Thaxton* court's commercial versus governmental analysis, is essentially a sovereign immunity analysis. As such, since sovereign immunity is exclusively concerned with the public entity as defendant, the holding in *Thaxton* should be limited to a school board as defendant.

The second basis the *Thaxton* court offers for its holding that a school board is not a "person" under the Valentine Act is by application of the statutory principle *"expressio unius est exclusio alterius."* Under this principle "the express mention of but one class of persons in a statute implies the exclusion of all others." *Thaxton,* 21 Ohio

St.3d at 57, 488 N.E.2d 136 (quoting *State, ex rel. Boda v. Brown,* 157 Ohio St. 368, 372, 105 N.E.2d 643 (1952)). In this argument, it is even clearer that the Ohio Supreme Court viewed the school boards only as defendants.

*Thaxton's expressio unius est exclusio alterius* analysis focuses upon the last clause in the Valentine Act's "person" definition:

> (A) "Person" includes corporations, partnerships, and associations existing under or authorized by any state or territory of the United States, *and solely for the purpose of division (B) of this section, a foreign governmental entity.*

*Ohio Rev.Code* § 1331.01(A) (emphasis added). The *Thaxton* court held that the express mention of foreign governmental entities in the statute, makes the exclusion of any express reference to other governmental entities, such as school boards, fatal to the extension of the definition of "person" to school boards.

■ On closer inspection the application of the statutory principle of *expressio unius est exclusio alterius* reinforces the interpretation that the statute speaks only to government bodies as defendants. The phrase at issue begins "solely for the purpose of division (B) of this section...." When we look at division (B) of the Act, we find that it is the definition of a "trust," that is to say the target of the Valentine Act. Therefore, foreign governmental bodies are expressly included within the definition of trusts under the statute. Under the strict rule of *expression unius est exclusio alterius,* this would mean that school boards are excluded from being Valentine Act trusts. Thus the holding of *Thaxton* is: school boards may not be trusts, that is they may not be Valentine Act defendants. Since the Act's express reference to foreign governmental bodies is explicitly limited by the language of the statute to foreign governmental bodies as defendants, the principle of *expressio unius est exclusio alterius* would only allow an inference about school boards as defendants. However, the exclusion of school boards from consideration as "trusts" or from being Valentine Act defendants does not prevent them from being plaintiffs under the Act.

The *Thaxton* case was applied by an Ohio appellate court in *Stow v. Summit County,* 70 Ohio App.3d 298, 590 N.E.2d 1363 (Summit Cty.1990). In *Stow* one city, Stow, sued another city, Akron, and a county, Summit County, under the Valentine Act. Interestingly, while following the second *Thaxton* argument, the court specifically held that the defendants were not "persons" within the meaning of the Valentine Act, but made no mention of the standing of the plaintiff, the City of Stow. *Stow,* 70 Ohio App.3d at 300, 590 N.E.2d 1363.

Both of the arguments which the *Thaxton* court offers for its holding are directed toward the exclusion of school boards as Valentine Act defendants. However, these arguments offer no impediment to school boards using the Valentine Act as plaintiffs. The first argument is at heart based on sovereign immunity, a defense. The second, based on *expressio unius est exclusio alterius,* excludes school boards from the definition of trusts, that is Valentine Act defendants.

Finally, the *Thaxton* holding, though directed at school districts in particular, by its own language applies to all Ohio government entities. *Thaxton,* 21 Ohio St.3d at 57, 488 N.E.2d 136 (holding applies to a "board of education or other public entity"). If this were to be taken literally it would severely conflict with Section 109.81 of the Ohio Revised Code. That section explicitly empowers the Ohio Attorney General to bring lawsuits on behalf of Ohio's public entities:

> The attorney general shall act as the attorney at law in any antitrust case for the state. He may act as the attorney at law in any antitrust case for *any political subdivision* of the state, for the governing body of any political subdivision of the state, or, as parens patriae, for any natural person residing in the state.

*Ohio Rev.Code* § 109.81 (emphasis added). We are instructed by the Ohio courts, when interpreting the Revised Code to attempt to reconcile possible conflicts:

> It is the duty of a court called upon to interpret a statute to breathe sense and meaning into it; to give effect to all its terms and provisions; and to render it

compatible with other and related enactments whenever and wherever possible. *Commonwealth Loan Co. v. Downtown Lincoln Mercury Co.*, 4 Ohio App.2d 4, 6, 33 O.O.2d 6, 7, 211 N.E.2d 57 (Hamilton County 1964).

Therefore, we hold that there is no impediment in Ohio law to a school district asserting the rights of a plaintiff under the Valentine Act. Accordingly, the Attorney General has standing to bring this action on behalf of the school boards of Ohio.

### Fraudulent Concealment

■ The statute of limitations for an action under the Clayton Antitrust Act is four years. 15 U.S.C. § 15b. Having filed this suit August 11, 1993, under this statute of limitations the Plaintiff would be limited to claims which arise after August 11, 1989. However, the First Amended Complaint alleges bid rigging which began as early as 1977 and continued until "at least 1989." In order to recover for this period the Plaintiff must overcome the statute of limitations. The statute of limitations applicable to private antitrust actions may be tolled where a plaintiff did not file its action in time because of ignorance resulting from a defendant's fraudulent concealment. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir.1975); *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230 (6th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974).

■ There are strong policy reasons for the enforcement of statutes of limitations. They are vital to the welfare of society and are favored in the law. *Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879). "Stale conflicts should be allowed to rest undisturbed after the passage of time has made their origins obscure and the evidence uncertain." *Dayco*, 523 F.2d at 394. For this and other reasons the Federal Rules require that fraud which would toll the statute must be plead with particularity. Fed. R.Civ.P. 9(b). The Sixth Circuit has clarified that three elements must be pleaded in order to establish fraudulent concealment:

(1) wrongful concealment of their actions by the defendants.

(2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and

(3) plaintiff's due diligence until discovery of the facts.

*Id.* (citing *Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir.1974)). We find that the Plaintiffs have met their pleading requirement in regard to these three elements.

■ The first element that must be pleaded in order to establish fraudulent concealment is "wrongful concealment of their actions by the defendants." *Dayco*, 523 F.2d at 394. When the underlying cause of action is for violations of antitrust law, the Plaintiff must allege some affirmative misconduct preventing discovery and excusing delay. *Pinney Dock & Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1468–69 (6th Cir.) *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

■ In his Amended Complaint the Plaintiff has alleged:

36. Despite the exercise of due diligence, Plaintiff was unaware of and did not discover the existence of the claim sued under because Defendants and their co-conspirators fraudulently concealed the existence of the combinations and conspiracies by the following affirmative acts:

(a) Submitting prearranged, complementary losing bids on milk supply contracts previously allocated for the purpose of concealing their contract allocation scheme and in order to give the illusion of competition among the Defendants and their co-conspirators;

(b) Secretly conducting activities in furtherance of the conspiracies, avoiding reference to the conspiracies in documents, and confining information concerning the conspiracies to only key responsible individuals of involved companies; and

(c) Engaging in other fraudulent acts not now known to Plaintiff in an attempt to continue to conceal as much of their illegal conduct as possible.

*First Amended Complaint* at ¶ 36, Document 25. The Plaintiff school districts created a system of sealed bids for milk contracts in order to assure the integrity of the bidding process. We are satisfied that the allegation of the use of prearranged rigged bids, which were secretly negotiated and subsequently concealed is sufficient to meet the affirmative misconduct requirement of fraudulent concealment.

The Defendants argue that the Plaintiff merely alleges silence on the part of the Defendants. *See Pinney Dock*, 838 F.2d at 1472 ("Mere silence, where there is no duty to speak, does not toll the statute.") The *Pinney Dock* court considered the issue of what constitutes an affirmative action sufficient to rise to the level of fraudulent concealment at some length. That court clarified with this example:

> "In [the Complaint] the plaintiffs allege that the defendants performed certain acts in furtherance of the conspiracy which created the false impression that project bids were competitively make rather than rigged. This is something more than silence; if true, it constitutes an attempt to deceive both the competition and the public into the belief that all of their bids were made legitimately and as the result of competitive considerations. It is precisely the sort of affirmative act of deception required by the jurisprudence." [*Ingram Corp. v. J. Ray McDermott & Co.*, 1980–1 Trade Cas. (CCH) ¶ 78,414 (E.D.La.1980) ].
> The affirmative acts referred to in [the Complaint] included submitting prearranged losing bids by the company that had agreed not to receive the award, in order to give the illusion of competition among the corporate defendants, . . . .

*Pinney Dock*, 838 F.2d at 1473. This citation give us ample grounds for finding that the sort of bid rigging alleged by the Plaintiffs constitutes affirmative acts, which if proved will be sufficient to meet the first element of the Sixth Circuits test for fraudulent concealment. *See Dayco*, 523 F.2d at 394.

The second element and third elements which the Sixth Circuit requires a plaintiff to plead in order to establish fraudulent concealment are (2) the failure of the plaintiff to discover the operative facts of the alleged violation and (3) the plaintiff's due diligence until discovery. *Dayco*, 523 F.2d at 394. These two are closely related since the Supreme Court long ago recognized that in respect to fraudulent concealment "the means of knowledge are the same thing as actual knowledge. . . ." *Wood v. Carpenter*, 101 U.S. 135, 143, 25 L.Ed. 807 (1879). A plaintiff therefore must prove that he neither knew nor should have known of his potential claims, despite his due diligence. In the instant case, the Plaintiff claims that the school districts

> "were unaware of and did not discover the existence of the claim sued upon because Defendants and their co-conspirators fraudulently concealed the existence of the combinations and conspiracies. . . ."

First Amended Complaint, at ¶ 36, Document 25. In addition the Plaintiff claims that the school districts showed due diligence through their use of sealed bids and their diligent inquiry which finally lead to the discovery of their alleged claims. *Id.* at ¶ 35.

As noted earlier, the Sixth Circuit has given abundant guidance in regard to the requirements for pleading fraudulent concealment.[1] In particular both the Plaintiff and the Defendants have referred repeatedly the *Pinney Dock* case, and rightly so, because the thorough analysis in that case has gained wide acceptance.[2] It is instructive that at the end of the Court of Appeals detailed discussion in *Pinney Dock*, the issue upon which the court focused for its decision

---

1. *Pinney Dock & Transport Co. v. Penn Central Corp.*, 838 F.2d 1445 (6th Cir.) *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988); *Campbell v. Upjohn*, 676 F.2d 1122 (6th Cir. 1982); *Dayco Corp. v. Goodyear Tile & Rubber Co.*, 523 F.2d 389 (6th Cir.1975); *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230 (6th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974).

2. *See, for example, In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1179 (3rd Cir.1993); *Conmar Corp. v. Mitsui & Co. (U.S.A.) Inc.*, 858 F.2d 499, 505 (9th Cir.1988); *State of South Dakota v. Kansas City Southern Industries*, 880 F.2d 40, 46 (8th Cir.1989).

concerning fraudulent concealment is that the plaintiffs knew of the acts of the defendants well in advance of the filing of their complaint. *Pinney Dock*, 838 F.2d at 1477. The question of affirmative acts of concealment which the Court of Appeals considered at great length, and which the Defendants rely heavily upon for this motion was in the end not dispositive. The Court of Appeals concluded:

> that [the relationship between the parties] may contain the seeds of support for the finding of the district judge that factual questions of actual concealment was presented. However, we also concluded that the record leads us to ... the ... conclusion ... that the time eventually arrived when "the alleged conspiracy was no longer concealed and could have been discovered by due diligence well within the statutory period."

*Pinney Dock*, 838 F.2d at 1477 (quoting from *Gaetzi v. Carling Brewing Co.*, 205 F.Supp. 615 (E.D.Mich.1962)). Therefore, the Court of Appeals based its final decision to deny the plaintiffs' claim of fraudulent concealment on its determination that the plaintiffs knew of their claims and had not exercised due diligence in pursuing them. The Court of Appeals pointed to evidence in the record that the *Pinney Dock* plaintiffs were advised by counsel that the defendants were engaging in acts in violation of the antitrust laws. Internal documents indicate that those plaintiffs were convinced that their attorneys' advice was correct. The Court of Appeals concluded:

> To hold that a tolling or suspension of the limitations of action must continue unless or until proof positive existed of a wrong (which might never be established in fact) would abort the policy of the law of repose in statutes of limitations of diligence in the equitable principles permitting suspension of them.

*Pinney Dock*, 838 F.2d. at 1478.

Indeed, in those fraudulent concealment cases where the courts have denied the plaintiffs the benefit of tolling of the statute of limitations, the courts repeatedly have focused on knowledge and due diligence. *See Pinney Dock & Transport Co. v. Penn Central Corp.*, 838 F.2d 1445 (6th Cir.) *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988); *Campbell v. Upjohn*, 676 F.2d. 1122 (6th Cir.1982) (holding that the plaintiff was not entitled to a tolling of the statute when he did not read the merger agreement at the time he signed it and should have learned of the alleged scheme more than two years before suit was actually filed); *Dayco Corp. v. Goodyear Tile & Rubber Co.*, 523 F.2d 389 (6th Cir.1975) (denying tolling of statute when congressional hearings and press coverage should have alerted the plaintiff); *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230 (6th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974) (holding that ignorance by the plaintiff of his legal rights would not toll the statute).

We find this emphasis on discovery and due diligence in the fraudulent concealment cases to be well taken. The bedrock threshold for granting the equitable tolling of the statute of limitations for fraudulent concealment must be whether a plaintiff knew or through due diligence should have known of the existence of his claims. In the case at bar, the Defendants make no allegations that the school boards had discovered the operative facts that form the basis of their bid rigging claims, or that the Plaintiffs could have discovered the alleged bid rigging through due diligence. The main thrust of the Defendants arguments in regard to the issue of the Plaintiff's knowledge and diligence is that the Plaintiff has not pleaded these claims with sufficient particularity. We find that the Plaintiff's allegations are sufficient to overcome this motion to dismiss.

In ruling that the Plaintiff's Complaint, taken in conjunction with the Outline Description of Overlapping Conspiracies, contains allegations sufficient to survive these Motions to Dismiss, we make no judgment as to the actual merits of the Plaintiff's case. We must deny the Defendants' motion unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balderaz v. Porter*, 578 F.Supp. 1491, 1494 (S.D.Ohio

1983). At trial the Plaintiff, after the benefit of discovery, bears the considerably greater burden of proving his allegations, in particular the threshold burden of proving fraudulent concealment, with respect to each defendant, individually.

**Northeastern Districts Request to Sever**

Defendants Smith Dairy Products Company, Hillside Dairy, Goshen Dairy, and Superior Dairy have moved that the school districts and the six Defendants described by the Plaintiff as participants in the Northeast conspiracy be dismissed from this case or in the alternative that they be severed and transferred to the Northern District of Ohio. Defendant Borden Dairy has filed a Reply in support of this motion. These Defendants argue that their joinder in this case under the Plaintiff's First Amended Complaint is improper. They contend that the rights to relief asserted by the Plaintiff against them do not arise out of the same transaction, occurrence, or series of transactions or occurrences as the claims against the other Defendants.

The Federal Rules of Civil Procedure allow for joinder of parties.

**Rule 20. Permissive Joinder of Parties**

(a) **Permissive Joinder.** All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative *in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences* and if any question of law or fact common to all these persons will arise in the action. All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief *in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences* and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Fed.R.Civ.P. 20(a) (emphasis added).

There is no dispute that common questions of law exist among the claims against various Defendants. However, the moving Defendants contest whether the occurrences or transactions are the same. They argue that the Plaintiff has alleged three separate conspiracies and that even if these allegations were correct, the existence of separate, similar conspiracies is not sufficient to permit joinder under this rule. *See Saval v. BL Ltd.,* 710 F.2d 1027 (4th Cir.1983) (plaintiffs with similar complaints against same defendant denied joinder); *Kenvin v. Newburger, Loeb and Company,* 37 F.R.D. 473 (S.D.N.Y. 1965) (investor claiming fraud in identical manner by four separate investors denied joinder).

Joinder is generally favored under the federal rules. *United Mine Workers v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *Lasa Per L'Industria Del Marmo Soc. Per Azioni v. Alexander,* 414 F.2d 143, 147 (6th Cir.1969) ("The intent of the rules is that all issues be resolved in on action, with all parties before one court, complex though the action may be."). Joinder promotes judicial economy, trial convenience and expedites the final determination of disputes. *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974); *Peffers v. Bowman,* 599 F.Supp. 353, 356 (D.Idaho 1984). In *Mosley* the Eight Circuit held that the terms "transaction or occurrence or series of transactions or occurrences" should be broadly interpreted to

> permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Mosley,* 497 F.2d at 1333. Finally, permissive joinder rests with the sound discretion of the district court. *Swanigan v. Amadeo Rossi, S.A.,* 617 F.Supp. 66, 67 (E.D.Mich. 1985).

■ The Plaintiff has claimed a series of overlapping and interwoven conspiracies. He has alleged three main conspiracies. However, individual Defendants are alleged to have participated in more than one of these three conspiracies. In exercising discretion under Rule 20, the district court must determine whether joinder will comport with principles of fundamental fairness. *McIntyre v. Codman & Shurtleff, Inc.*, 103 F.R.D. 619, 622 (S.D.N.Y.1984). We realize that the size and complexity of this suit is a burden for all the Defendants. However, we must balance the problems raised by joinder with the advantages both judicial and practical of trying all the Attorney General's overlapping conspiracy claims together. We have attempted through the creation in Columbus of one central document depository to avoid some of the onus of document discovery. Therefore, we deny the Northeast Defendants motion to dismiss or to transfer to the Northern District of Ohio.

### The McClave Report

Throughout their various Motions to Dismiss, the Defendants have argued that the First Amended Complaint, even as supplemented by the Plaintiff's Outline, is insufficient to put them on notice of the claims against them and consequently insufficient to allow them to properly prepare their defense. In their Supplemental Memorandum for a More Definite Statement (doc. 140), the Defendants, with the benefit of evidence uncovered in discovery, have renewed this contention. They have deposed what they represent as the Plaintiff's "key witnesses" with respect to the conspiracy. The Defendants contend that:

> These depositions reveal that the Plaintiff's case against 10 of 13 Defendants rests entirely on a "market analysis" using methodology developed by James T. McClave and Info Tech. To date, Plaintiff has refused to provide this "market analysis" to Defendants.

Defendants' Supplemental Memorandum at 2, Document 140. We agree that the Defen-

---

**3.** In ordering the discovery of this report we find ourselves in agreement with Judge Bertelsman, in the Eastern District of Kentucky. *Common-*

dants should be entitled to the information in the McClave report.[3] Accordingly, when the Plaintiff produces his list of expert witnesses on May 15, 1994, in accord with our Preliminary Pretrial Order, he will also provide the Defendants with any expert reports, preliminary or otherwise, including the McClave "market analysis."

### CONCLUSION

Accordingly, the Defendants' Motions to Dismiss or for a More Precise Statement are hereby denied. The Northeast Defendants' Motion that they be dropped or transferred is also denied. Finally, the Plaintiff is ordered to provide the Defendants with the McClave market analysis, as directed herein.

SO ORDERED.

*wealth v. Lousi Trauth Dairy, Inc.*, No. 92–50 *slip op.* (E.D.Ky., June 25, 1992).